THE STATE OF OHIO, APPELLEE, *v.* DORAN, APPELLANT.

[Cite as State *v.* Doran (1983), 5 Ohio St. 3d 187.]

(No. 82-1193—Decided June 22, 1983.)

190

*Mr. Keith A. Shearer,* prosecuting attorney, and *Mr. Martin Frantz,* for appellee.

*Mr. J. Dean Carro* and *Appellate Review Office, School of Law, University of Akron,* for appellant.

CELEBREZZE, C.J. This appeal poses several previously unanswered questions significant to the administration of criminal justice in this state. First, we are asked to define the defense of entrapment. Second, we must decide whether entrapment is an affirmative defense. The final issue presented is whether a trial court commits prejudicial error by failing to allocate any burden of proof on the entrapment defense.

## I

We must initially choose between defining entrapment under the "subjective" or "objective" test. Succinctly stated, the subjective test of entrapment focuses upon the predisposition of the accused to commit an offense whereas the objective or "hypothetical-person" test focuses upon the degree of inducement utilized by law enforcement officials and whether an ordinary law-abiding citizen would have been induced to commit an offense.

The United States Supreme Court adopted the subjective test of entrapment for federal prosecutions in *Sorrells* v. *United States* (1932), 287 U.S. 435. That test has withstood several challenges to its continued viability. See *Sherman* v. *United States* (1958), 356 U.S. 369 and *United States* v. *Russell* (1973), 411 U.S. 423. However, the objective test has won favor with a minority of United States Supreme Court justices and has been adopted by several states.[1]

This court has not yet defined which test is applicable in this state. Since defining the entrapment defense under either of the above standards does

---

[1] See Roberts, J., concurring in *Sorrells, supra;* Frankfurter, J., concurring in *Sherman, supra;* and Stewart, J., dissenting in *Russell, supra.* See, also, *Grossman* v. *State* (Alaska 1969), 457 P.2d 226; *People* v. *Turner* (1973), 390 Mich. 7, 210 N.W.2d 336; *State* v. *Mullen* (Iowa 1974), 216 N.W.2d 375; and *People* v. *Barraza* (1979), 23 Cal.3d 675, 591 P.2d 947.

not implicate federal constitutional principles, we are not bound by *Sorrells* and its progeny and are free to adopt either standard.

Appellant advocates adoption of the objective test. The approach advanced by appellant would examine the conduct of the police officer or agent and require a determination of whether the police conduct would induce an ordinary law-abiding citizen to commit a crime. Appellant's position is that the conduct of the police or their agent in this case was compelling and outrageous in continuing to induce appellant into committing a crime after appellant had repeatedly refused to succumb to these inducements.

The state urges adoption of the subjective test. The subjective test has already been utilized by several lower Ohio courts.[2] The state suggests that the emphasis should be on the predisposition of the accused to commit a crime and that law enforcement should be free to use "artifice and stratagem" to apprehend those engaged in criminal activity.

For the reasons to follow, we hold that the defense of entrapment in Ohio will be defined under the subjective test.

We are constrained to reject the objective or hypothetical-person test because of the dangers inherent in the application of that standard.[3] First, there is the danger that the objective approach will operate to convict those persons who should be acquitted. This is true because the objective test focuses upon the nature and degree of the inducement by the government agent and not upon the predisposition of the accused. Thus, even though the accused may not be individually predisposed to commit the crime, the inducement may not be of the type to induce a reasonably law-abiding citizen, and thus lead to the conviction of an otherwise innocent citizen.

Equally oppressive is the danger that the objective test may lead to acquittals of those who should be convicted. Again, the objective test emphasizes the effect of the inducement upon an ordinary law-abiding citizen and renders the predisposition of the accused irrelevant. If that is the case, a "career" criminal, or one who leaves little or no doubt as to his predisposition to commit a crime, will avoid conviction if the police conduct satisfies the objective test for entrapment.

A final danger is that adoption of the objective test may adversely impact on the accuracy of the fact-finding process. The determinative question of fact under the objective standard is what inducements were actually offered. Since most of these inducements will be offered in secrecy, the trial will more than likely be reduced to a swearing contest between an accused claiming that improper inducements were used and a police officer denying the accused's exhortations. Regardless of whether this situation favors the pros-

---

[2] See *State* v. *Metcalf* (1977), 60 Ohio App. 2d 212 [14 O.O.3d 186]; *State* v. *Hsie* (1973), 36 Ohio App. 2d 99 [65 O.O.2d 99]; *State* v. *McDonald* (1972), 32 Ohio App. 2d 231 [61 O.O.2d 252]; and *State* v. *Dutton Drugs* (1965), 3 Ohio App. 2d 118 [32 O.O.2d 204].

[3] See, generally, Park, The Entrapment Controversy (1976), 60 Minn. L. Rev. 163.

ecution or defense, the fact-finder is still in the position of having to decide the truth solely upon the testimony of two diametrically opposed witnesses.

Conversely, the subjective test presents relatively few problems. By focusing on the predisposition of the accused to commit an offense, the subjective test properly emphasizes the accused's criminal culpability and not the culpability of the police officer.[4] Indeed, the subjective test reduces the dangers of convicting an otherwise innocent person and acquitting one deserving of conviction. In addition, the fact-finding process is enhanced because evidence of predisposition may come from objective sources.

Our sole reservation concerning the subjective test involves the scope of admissible evidence on the issue of an accused's predisposition. While evidence relevant to predisposition should be freely admitted, judges should be hesitant to allow evidence of the accused's bad reputation, without more, on the issue of predisposition. Rather, while by no means an exhaustive list, the following matters would certainly be relevant on the issue of predisposition: (1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity. Under this approach, the evidence on the issue of an accused's predisposition is more reliable than the evidence of the nature of inducement by police agents under the objective test.

Consequently, where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal. *Sherman, supra,* at 372; *Sorrells, supra,* at 442. However, entrapment is not established when government officials "merely afford opportunities or facilities for the commission of the offense" and it is shown that the accused was predisposed to commit the offense. *Sherman, supra,* at 372.

## II

In the case at bar, the trial court's instruction on entrapment, as previously set forth, is consonant with the definition of entrapment announced in this case. Nevertheless, our inquiry does not end at this juncture. We must now analyze whether the trial judge correctly characterized entrapment as not being an affirmative defense.

R.C. 2901.05(C)(2) states that an affirmative defense is:

"A defense involving an excuse or justification peculiarly within the

---

[4] An accused may put the conduct of the police or their agent into issue by arguing that such conduct was so outrageous as to violate due process. *Rochin* v. *California* (1952), 342 U.S. 165. In our view, a "due process" defense is analytically distinct from the defense of entrapment.

knowledge of the accused, on which he can fairly be required to adduce supporting evidence."[5]

If a defense is characterized as an affirmative defense, R.C. 2901.05(A) provides that the accused has the burden of going forward as well as the burden of proving the defense by a preponderance of the evidence.

There is no question that the defense of entrapment involves an "excuse or justification" as that phrase is used in R.C. 2901.05(C)(2). When an accused raises the defense of entrapment, the commission of the offense is admitted and the accused seeks to avoid criminal liability therefor by maintaining that the government induced him to commit an offense that he was not predisposed to commit. In this sense, entrapment is the classic confession and avoidance and clearly meets the first requirement of R.C. 2901.05(C)(2).

We must next determine whether entrapment is *either* "peculiarly within the knowledge of the accused" *or* of such nature that the accused "can fairly be required to adduce supporting evidence." We are satisfied that entrapment fits into both categories. The key consideration with the subjective test is whether the accused was predisposed to commit the offense. While proof of predisposition may come from objective sources, only the accused possesses the actual knowledge concerning his predisposition to commit the offense.

Further, we do not believe it is unfair to require the accused to adduce supporting evidence of his lack of predisposition. The accused, as a participant in the commission of the crime, will be aware of the circumstances surrounding the crime, and is at no disadvantage in relaying to the fact-finder his version of the crime as well as the reasons he was not predisposed to commit the crime. Moreover, the accused will certainly be aware of his previous involvement in crimes of a similar nature which may tend to refute the accused's claim that he was not predisposed to commit the offense. In summary, none of the evidence which is likely to be produced on the issue of predisposition would be beyond the knowledge of the accused or his ability to produce such evidence.

Accordingly, we hold that entrapment is an affirmative defense under R.C. 2901.05(C)(2).

## III

Under the foregoing analysis, it becomes patent that the trial court erred in not characterizing entrapment as an affirmative defense. Finally, the question becomes whether that error was prejudicial to the rights of appellant.

The court of appeals below determined that appellant had actually benefited by the error committed at trial. The court below reasoned that, had the trial court properly instructed the jury that entrapment was an affirma-

---

[5] We have held the following defenses to be affirmative defenses under R.C. 2901.05(C): *State* v. *Rogers* (1975), 43 Ohio St. 2d 28 [72 O.O.2d 16] (reasonable force to effect a citizen's arrest); *State* v. *Humphries* (1977), 51 Ohio St. 2d 95 [5 O.O.3d 89] (insanity); and *State* v. *Melchior* (1978), 56 Ohio St. 2d 15 [10 O.O.3d 8] (self-defense).

tive defense, appellant would have had the burden of proving that he was entrapped by a preponderance of the evidence. Since the trial court did not instruct that appellant had the burden of proving the defense, appellant was actually relieved of this burden. We disagree.

Even though we have no quarrel with the trial court's instruction defining entrapment, the trial court completely failed to allocate a burden of proof with respect to the defense other than stating that entrapment was not an affirmative defense which we have previously found to be patently erroneous. Under the trial court's treatment of entrapment, the state should have had the burden of disproving entrapment. Had the jury been so instructed, the court of appeals would have been correct in deciding that appellant had been benefited by the trial court's error. However, as instructed, the jury had no idea who had the burden to raise the defense of entrapment and either prove its existence or non-existence.

It was well-stated in *State* v. *Gideons* (1977), 52 Ohio App. 2d 70, 78 [6 O.O.3d 50]:

"To properly decide a criminal case, it is essential that the jury has a clear understanding of which party has the burden of proof. Without such an understanding, the jury cannot possibly perform its function.* * *"

We cannot say with any degree of certainty that the jury did not interpret the instruction to impose the burden of proof on entrapment on the appellant beyond a reasonable doubt.[6] Consequently, a jury instruction which fails to allocate any burden of proof on the affirmative defense of entrapment is inherently misleading and confusing and is prejudicial error.

Accordingly, the judgment of the court of appeals below is reversed and the cause remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, J., concurs in judgment only.

HOLMES, J., dissents in part and concurs in part.

HOLMES, J., dissenting in part and concurring in part. I agree that entrapment is an affirmative defense, but completely fail to understand how a jury instruction which does not state that the defense has the burden of proving such affirmative defense is prejudicial to the one asserting same. Here, the trial court incorrectly stated to the jury that entrapment was not an affirmative defense, but the error was harmless beyond a reasonable doubt.

---

[6] Cf. *State* v. *Chase* (1978), 55 Ohio St. 2d 237 [9 O.O.3d 180], with *State* v. *Abner* (1978), 55 Ohio St. 2d 251 [9 O.O.3d 187].

The trial court's erroneous instruction, in effect, placed a greater burden on the state by requiring the state to disprove the claim of entrapment. The incorrect instruction worked in the appellant's favor by unnecessarily enlarging the burden of proof to be discharged by the state. Such is not reversible error pursuant to *Chapman* v. *California* (1967), 386 U.S. 18.