**State**
**v.**
**Battle**
*[Cite as 3 AOA 33]*

*Case No. 10823*
*Montgomery County (2nd)*
*Decided May 2, 1990*

*Lorine M. Reid, Assistant Prosecuting Attorney, 41 N. Perry Street, Dayton, Ohio 45402, Attorney for Plaintiff-Appellee.*

*Wayne P. Novick, 2410-B Brittany Court, Centerville, Ohio 45459-3725, Attorney for Defendant-Appellant.*

WOLFF, P.J.

Charles L. Battle was found guilty by a jury of aggravated trafficking and sentenced to two years confinement. He appeals, advancing the following assignment of error:

"THE TRIAL COURT ERRED IN ITS IN-
STRUCTION TO THE JURY ON
ENTRAPMENT.

"A. The trial court gave disproportionate importance to the issue of predisposition resulting in prejudice to defendant-appellant.

"B. The trial court erroneously used a list of evidentiary considerations found in *State vs. Doran* (1983), 5 Ohio St. 3d 187, as a definition of predisposition."

The facts, as summarized in Battle's appellate brief are as follows:

"On July 17, 1987, at approximately 2:30 PM, Defendant-Appellant, Charles Battle, was standing with a few of his friends at the corner of Dearborn and McCabe Streets in Dayton, Ohio. At that time, a car pulled up to the curb. The driver of the car made eye contact with Mr. Battle and motioned for him to approach the car. Mr. Battle obliged.

"The driver of the car, unbeknownst to Mr. Battle, was undercover police officer, Ernest Letlow, Jr.

"When Mr. Battle approached the car, he asked the driver, through the open passenger window, 'What [do you] want?' The officer replied that he was 'looking for a quarter of cocaine.' A 'quarter' being a quarter gram of 'crack' cocaine. Mr. Battle directed the officer to McCabe Park. The officer responded that McCabe Park was deserted.

"Mr. Battle then indicated that he knew of someone by the name of Michael Thompson who could sell the officer a 'quarter.' The officer and Mr. Battle proceeded to try to locate Michael Thompson, however, they were unsuccessful.

"The officer returned Mr. Battle to the corner of McCabe and Dearborn.

"As they arrived at the corner, they noticed a group of men standing across the street. Mr. Battle stated to the undercover officer that, although he didn't know of the men personally, he did recognized them as area drug dealers. Mr. Battle was able to recognize some of the men as area drug dealers because he lived in the immediate area.

"The officer pulled up to where the group of men were standing and Mr. Battle got out of the car. Mr. Battle approached the men and told them that the "guy", i.e., the undercover officer, wanted a "quarter." One of the men had a small piece of "crack" but not a quarter. The man offered the smaller piece of "crack" cocaine to the officer via Mr. Battle.

"Mr. Battle did not encourage the officer to buy the smaller piece, but instead relayed to him the option that the man proposed, i.e., the officer could buy the small piece or come back later that day for a 'quarter.'

The officer decided to purchase the smaller piece of "crack" cocaine and leave.

"After the undercover officer left Mr. Battle, he was approached for a filed investigation by uniformed officers. (The uniformed officers had been surveilling the incident by way of radio.)"

Before the jury began its deliberations, the trial court instructed as to entrapment, per Battle's request, as follows:

"Now Charles Battle claims a defense that is known as entrapment. Entrapment occurs when a police officer plants in the mind of the defendant, Charles Battle, the original idea or purpose, thus the furnishing from the start the incentive or moving force to commit an offense that the defendant had not considered and which he would not have carried out except for that incentive or moving force. If the defendant did not himself conceive of committing the offense, and if it was suggested to him by the officer for the purpose of causing his arrest and prosecution, the defendant must be found not guilty. Briefly, the whole criminal idea and purpose originates with the police, not with the defendant.

"However, if the defendant commits an offense while carrying out, even in part, his own idea or purpose to violate the law, there is no entrapment. The officer may go so far as to suggest the offense and to provide the opportunity to commit it, and if the defendant is already disposed to commit the offense and acts pursuant to a criminal idea or purpose of his own, then there is no entrapment, and the defendant may be found guilty.

"Entrapment is an affirmative defense and the defendant has the burden of proof to prove entrapment by a preponderance of the evidence. The defense of entrapment is established where the criminal design, plan, or idea originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit an alleged offense and induce its commission in order to prosecute.

During the course of its deliberations, the jury requested "some...clarification on the issue of entrapment." The trial court repeated its earlier instruction, *supra*, and added the following additional instructions:

"Now, it is proper to consider the predisposition of an accused, here Charles Battle, to com-

mit a crime. And it suggests that the law enforcement should be free to use artificial strategies to apprehend those engaged in criminal activity.

"Now, in determining predisposition, I'm going to read a list to you. This is by no means an exhaustive list, but these matters should be relevant on the issue of predisposition of Charles Battle to commit a crime."

One, the accused's previous involvement in the criminal activity of the nature charged.

Two, the accused's ready acquiescence to the inducements offered by the police.

Three, the accused's expert knowledge in the area of the criminal activity charged.

Four, the accused's ready access to contraband.

And five, the accused's willingness to involve himself in criminal activity.

That's all I'm going to tell you about it. It's in your hands. Go back and go to work.

These supplemental instructions were objected to by defense counsel:

"Your Honor, the way we read the Doran case, which contains that list, non-exhaustive list of the matters -- the way we read that, it appears to us that the Supreme Court is giving the trial courts information on what kind of evidence the trial court should allow in as relates to the issue of disposition or predisposition.

"And we don't see the list as in any way relating to the definition of predisposition or that that information should have been at all presented to the jury.

"The way we read it, and I'll quote, 'While evidence relevant to predisposition should be freely admitted, judges should be hesitant to allow evidence of the accused's bad reputation, without more on the issue of predisposition. Rather, while by no means an exhaustive list, the following matters would certainly be relevant on the issue of predisposition...'

"And then the list follows that the court just read, so we don't see a list as something that should be submitted to the jury in the form of a jury instruction. And we object on that basis."

Subpart A of the assignment of error advances two contentions. The first is that the trial court erroneously overemphasized the predisposition aspect of entrapment by even rereading the entrapment instruction. We reject this contention. There was no objection to the court's reinstructing on entrapment - Crim. R. 30(A) - and, more important, it was incumbent upon the trial court to address the jury's request for additional instruction on the entrapment issue. The second

contention is that inclusion of the *Doran* factors in the second instruction on entrapment overemphasized the predisposition aspect of entrapment vis a vis the police conduct aspect. The additional instruction first repeated the original entrapment instruction, which had been requested by defendant, and which amply discussed the police conduct aspect of the entrapment defense. *If* it was appropriate to inform the jury of the *Doran* factors, the trial court's so doing, without more, did not prejudicially overemphasize the predisposition aspect at the expense of the police conduct aspect. Although not critical to our evaluation of this argument, we note that trial counsel's objection to inclusion of the *Doran* factors did not specify overemphasis as a ground for objection. Furthermore, assuming it was proper to instruct the jury as to the *Doran* factors, concerns with overemphasis of the predisposition aspect of entrapment are vitiated by the fact that in adopting the "subjective" test for entrapment, the Supreme Court intended that the fact finder's focus be on the predisposition of the defendant rather than on the conduct of the police. *Id.* 190-192. We thus reject this contention.

In Subpart B of the assignment of error, Battle contends, as he did in the trial court, *supra*, that it was error to instruct the jury in any way as to the *Doran* factors. We cannot agree. While the Supreme Court may well have articulated these factors to assist trial judges in making correct decisions as to the admissibility of evidence, nothing in *Doran* suggests these factors are off-limits when it comes to jury instructions. Indeed, these factors invest the concept of "predisposition" with some readily understandable meaning. Venturing beyond the pattern instructions contained in Ohio Jury Instructions is often the essence of sound jury instruction, not a practice to be avoided.

The form in which the trial court instructed on the *Doran* factors was not objected to at trial, nor is it addressed by Battle in this court. Judge Fain's concurring opinion discusses the potential for jury misapprehension in the trial court's *Doran* instruction, and suggests a preferable instruction for use in the future. Notwithstanding what we find to be a problem with the form of the *Doran* instruction in this case, we decline to find prejudicial error. This is because the evidence of entrapment was insufficient to entitle Battle to any instruction whatsoever on entrapment, and the instruction on entrapment, albeit flawed, was more than Battle deserved and thus could not have worked to his disadvantage.

The assignment of error is overruled.

*Judgment affirmed.*

FAIN, J. concurs and concurs separately.
GRADY, J. dissents.

FAIN, J., concurring.

In my opinion, the supplemental instructions as given were erroneous. However, I conclude that the error in the giving of the supplemental instructions in this case was harmless because the evidence in this case was not sufficient to support a defense of entrapment, so that Battle was not entitled to an entrapment instruction in the first place. If Battle was not entitled to any entrapment instruction, any error in the giving of instructions on entrapment was necessarily harmless, since, from Battle's point of view, any entrapment instruction, even an erroneous one, was better than none.

I

The Supreme Court, in *State v. Doran* (1983), 5 Ohio St. 3d 187, laid out "matters" that "would certainly be relevant" to the issue of predisposition in the context of an entrapment defense. That is equivalent, in my view, to identifying factors that a jury might consider in determining the issue of predisposition.

I see nothing wrong with advising a jury that it may consider the *Doran* factors in determining the predisposition issue, especially when the jury has indicated, during its deliberations, that it wants clarification of the instructions on the entrapment defense.

The problem I have with the supplemental instructions actually given in this case (by which I mean the instructions given in response to the jury's question during its deliberations) is that they were worded in such a way as to suggest that each of the listed factors should have been considered adversely to Battle. I would have no quarrel with the supplemental instructions had they been worded in such a fashion that the jury could have considered each of the listed factors either adversely to Battle, or in Battle's favor, depending upon the state of the evidence with respect to that factor.

Here is that portion of the supplemental instructions concerned with the *Doran* factors, as actually given by the trial judge:

Now, in determining predisposition, I'm going to read a list to you. This is by no means an exhaustive list, but these matters should be rele-
vant on the issue of predisposition of Charles Battle to commit a crime.

One, the accused's previous involvement in the criminal activity of the nature charged.

Two, the accused's ready acquiescence to the inducements offered by the police.

Three, the accused's expert knowledge in the area of the criminal activity charged.

Four, the accused's ready access to contraband.

And five, the accused's willingness to involve himself in criminal activity.

With respect of each of the foregoing five factors, the instructions as given suggested:

(i) that the facts of this case established the factor to the detriment of the accused; and

(ii) that the factor could only have operated adversely to the accused, and could not have operated in his favor based on the evidence. For example, the third factor enumerated in the instructions, as given, suggested that the accused, Battle, had "expert knowledge in the area of the criminal activity charge." It also suggested that this factor could only have operated to the accused's detriment, assuming that the jury were to agree that he had such "expert knowledge," and that this factor could not have been considered affirmatively in the accused's favor if the jury were to have concluded that Battle was without any expertise in the illicit drug market.

I would have no quarrel with the following revised version of the supplemental instructions given by the court:

Now, in determining predisposition, I'm going to read a list to you. This is by no means an exhaustive list, but these matters would be relevant on the issue of the predisposition of Charles Battle to commit the crime charged:

"One, the extent of the accused's previous involvement, if any, in the criminal activity of the nature charged.

"Two, whether the accused readily acquiesced to the inducements offered by the police.

"Three, the extent of the accused's expert knowledge, if any, in the area of the criminal activity charged.

"Four, whether the accused had ready access to contraband.

"And five, the extent to which the accused was willing to involve himself in criminal activity."

As recast, the instructions avoid suggesting that the evidence supports a finding adverse to the accused with respect to each factor, and they also imply that findings favorable to the accused

with respect to one or more of the factors should be considered affirmatively in the accused's favor in determining whether he had a predisposition to commit the offense with which he was charged, for purposes of the entrapment defense.

In summary, it is not the fact that the trial judge covered the *Doran* factors in his supplemental instructions to the jury that I find to have been erroneous--I agree with Judge Wolff that the trial judge is to be commended for having covered those factors in his supplemental instructions; it is the way in which those instructions were worded that I find to have been erroneous.

## II

Although I find that the supplemental instructions as actually given by the trial court were erroneous, I conclude that the error was harmless. I come to this conclusion because I find that the evidence in this record would not have warranted any reasonable jury in having found that the police entrapped Battle. Therefore, Battle was not entitled to an instruction on entrapment, and the giving of any entrapment instruction, even a defective one, could only have worked to Battle's advantage since it gave him the possibility of an entrapment verdict, to which he was not entitled. According to Battle's brief, the evidence in this case is that he approached the arresting officer, not the other way around; that when the officer responded to Battle's inquiry by saying that the officer was "looking for a quarter of cocaine," Battle expressed no reluctance to assist the officer, nor did he demonstrate any unfamiliarity with the term "quarter" (meaning, evidently, a quarter of a gram); that when Battle's first suggestion that the officer should look for cocaine at McCabe Park was met with the response that McCabe Park was deserted, Battle then suggested that he knew of a man named Michael Thompson who could sell the officer a "quarter"; and that when the officer was returning Battle to the place of their original encounter after efforts to locate Michael Thompson had failed, Battle told the officer that he recognized some of the men standing there as drug dealers, and Battle then proceeded, without any prompting from the officer, to negotiate a drug deal as the officer's intermediary.

I am unable to find anything in the evidence in this case to suggest that Battle had the slightest reluctance to deal in cocaine. This is simply not a case where law enforcement officers browbeat, cajoled or seduced an otherwise law-abiding citizen into violating the law; it is not a case for entrapment, and, in my opinion, no entrapment instruction should have been given.

## III

Because I find the error in this case to have been harmless, I concur in the judgment of affirmance.

GRADY, J., dissenting.

I agree with Judge Fain that the supplemental instruction reciting from the text of *State* v. *Doran, supra,* was erroneous. In the form given the instruction suggests that each factor was proven, which was not the case, and should be considered adversely to Appellant.

The Supreme Court's purpose in *Doran* was not to state a principle of law in a form sufficiently neutral for use as a jury instruction. Concerned that prosecutors might seek to prove predisposition with a prejudicial 'laundry list' of bad conduct, the Court set out five matters of prior conduct as illustrative of proof of predisposition. Whether any factor is relevant at all depends on the record of the case. The Court was not dealing with weight and made no effort in its text to balance or neutralize its statement. In its recited form the passage from *Doran* is not appropriate for jury instructions, and in giving the factors cited in that form the trial court erred.

I do not agree that the error created by the supplementary instruction was harmless, either because an entrapment instruction was 'more than Battle deserved', as Judge Wolff concludes, or because no reasonable jury could have found entrapment, as concluded by Judge Fain. The trial court found that an entrapment instruction was warranted. The trial court saw and heard the witnesses personally and directly, and is in a far better position than is this court, judging from a dry record, to draw such conclusions. The evidence warranting the instruction may be thin, but it is in the record, and I am not prepared to say that the trial court erred in its judgment.

However, when the trial court concludes that an instruction is warranted it must be given in such a way that error is not created. Entrapment is an affirmative defense and any defendant who pleads it must prove it by a preponderance of the evidence. Predisposition weighs against entrapment. The form of instruction given presumed predisposition for the jury and negated Apellant's entrapment defense. Appellant was prejudiced thereby.

It is indeed ironic that the efforts of the Supreme Court in *Doran* to avoid error have in

this case been converted to that result. Though that was obviously not the trial court's intent or purpose, the judgment of the trial court should be reversed and the cause remanded for retrial.