[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Jeremy L. Brown (Brown) appeals his conviction and sentence entered on a jury verdict in the Hancock County Court of Common Pleas. Brown was convicted on two counts of trafficking in drugs, both in violation of R.C. § 2925.03(A). Brown was sentenced to serve six months incarceration on count one, a fifth degree felony, and eighteen months on count two, a fourth degree felony.[1] Both terms were ordered to be served consecutively. Brown raises two assignments of error:
 I. The lower court erred in restricting defendant's opening statement and voir dire.
 II. The lower court erred when it failed to rule immediately upon the Criminal Rule 29(A) motion which was made at the close of the state's case and by permitting the prosecutor to recall a witness presented earlier to rebut the motion for acquittal on the school yard provision.
 I.
On June 13, 1997, Brown sold four hits of lysergic acid diethylamide (LSD), to a confidential informant working in conjunction with the Hancock County Sheriff's Department. On July 16, 1997, within 1,000 feet of Washington Elementary School in Findlay, Ohio, Brown sold an additional 10 hits of LSD, again to the same confidential informant. Brown did not dispute he made these sales. In his defense, he claimed he was entrapped by the agent of the Hancock County Sheriff's Department.
Entrapment is an affirmative defense pursuant to R.C. § 2901.05(C)(2). State v. Doran (1983), 5 Ohio St.3d 187, 192-193,449 N.E.2d 1295. A subjective test is used to determine whether the defendant's claim of entrapment is a sufficient excuse or justification for his criminal conduct. Doran,5 Ohio St.3d at 192, 449 N.E.2d 1295. The focus of the inquiry is on the mind of the defendant, specifically whether he was predisposed to commit the criminal act. Id.; see also, State v. Italiano (1985),18 Ohio St.3d 38, 479 N.E.2d 857. The conduct of law enforcement authorities is relevant only to determine whether "they implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce[d] its commission in order to prosecute." Doran, 5 Ohio St.3d at 192, 449 N.E.2d at 1299. Further, no entrapment occurs where the police merely provide an opportunity for the commission of an offense by a person already predisposed to commit such offense. Doran, 5 Ohio St.3d at 192,449 N.E.2d 1295; See also, City of Bucyrus v. Knecht (Feb. 18, 1992), Crawford App. Nos. 3-91-20, 3-91-29, 3-91-27 and 3-91-28, unreported.
The state moved, prior to trial, to prohibit Brown from discussing during voir dire, opening argument, or elsewhere in the proceedings, prior instances where the informant allegedly sought to purchase drugs from persons other than Brown. The state argued that discussion of these unrelated incidents was not relevant to the issue in an entrapment case, the state of mind of the defendant.
The court granted the state's motion in part, precluding Brown from commenting on the informant's prior dealings with persons other than Brown. The court, however, left open the possibility that defense witnesses could discuss contact they had with the informant if developed as relevant during their testimony. Brown did call two witnesses who testified that the informant repeatedly asked them to sell him drugs.
In his first assignment, Brown claims the trial court erred when it restricted the scope of his voir dire examination of prospective jurors. The scope of voir dire is limited to asking prospective jurors questions as to their "qualifications" to serve as jurors. Crim.R. 24(A). The focus of the inquiry is generally on whether the prospective jurors have any prior experiences which would affect their ability to be fair and impartial, and thus "unsuitable" to serve as a juror. Crim.R. 24(B). A prospective juror does not hear evidence during voir dire and likewise should not to hear argument.
Brown contends that he was denied a fair and impartial jury because the trial court precluded him from discussing with prospective jurors statements made by a confidential informant to persons other than himself. However, Brown offers no explanation as to how "restrict[ing him] from even alluding to certain aspects of the confidential informant's conduct" denied him a fair and impartial jury. (Brown's brief p. 8).
The record on appeal contains over 400 pages of the trial transcript. Missing, however, is a transcription of the voir dire
proceedings. The record indicates that Brown chose not to transcribe these proceedings for our review. (Trial Transcript p. 22). It is the appellant's duty to order from the reporter that portion of the transcript he deems necessary to demonstrate his alleged error. App. R. 9(B).
Without a transcribed record of the voir dire proceedings, we are unable to determine whether error, if any, prejudiced Brown's jury selection. For instance, we do not know what inquiry Brown made during voir dire. Accordingly, because Brown has not explained, by reference to the record, how the court's limitation of his voir dire denied him a fair and impartial jury, his argument on this issue is without merit.
Brown also contends that he was denied a fair trial because his counsel was not permitted to mention the solicitations made by the informant upon persons other than Brown during opening statement for the defense.
Opening statement is an opportunity for counsel to tell the jury his client's defense and state the evidence he expects to offer in support of that defense. R.C. § 2945.10(B). Generally, "[c]ounsel should, of course, be accorded latitude by the trial court in making his opening statement." Maggio v. Cleveland
(1949), 151 Ohio St. 136, 141, 84 N.E. 912, 915. However, a trial court may, in its discretion, limit the scope of an opening statement when counsel intends to raise issues which could not possibly be proper for the jury's consideration. See, CincinnatiS. R. Co. v. Adams (1929), 33 Ohio App. 311, 169 N.E. 480 (trial court's limitation on counsel's opening statement was without error where the court merely precluded counsel from stating his view of the law to the jury).
Brown contends that he was denied a fair trial because his counsel was forbidden to state "what he expected the evidence to prove." In his opening statement, however, Brown's counsel stated he expected the evidence to prove, that Brown was "not guilty [by] . . . virtue of the entrapment defense" because the "origin of this crime, the seed bed for it, originated with Mike Dyer (the confidential informant)" and "Jeremy Brown was not predisposed to sell controlled substances." (Trial Rec. p. 38). Clearly, Brown's counsel did state what he thought the evidence wouldprove.
Brown's argument, however, appears to be that counsel was precluded from stating what evidence he planned to introduce to prove his affirmative defense. Specifically, Brown anticipated calling two co-workers who would testify that they were repeatedly solicited for drugs by the same confidential informant. This testimony, however, was eventually procured by Brown during the trial. Brown's counsel even argued its significance to the jury. Finally, there is nothing in the record to indicate that the jury was instructed not to consider this evidence as additional proof of entrapment.
Though the jury may not have received notice that Brown's co-workers would testify as to the methods employed by the informant, we see no error prejudicial to Brown here because the jury actually considered the disputed evidence. Therefore, error in limiting counsel's opening statement, if any, is harmless beyond a reasonable doubt. Crim.R. 52(A).
Brown's First assignment of error is overruled.
 II.
In his second assignment, Brown argues the court erred when it did not make an immediate ruling on his motion to acquit and permitted the state to recall a witness after Brown made such motion, but before the state rested its case.
After the state moved for the admission of exhibits, but before the state rested its case, Brown moved for an acquittal, citing Crim.R. 29(A). Brown claimed there was insufficient evidence as a matter of law to prove that the second drug sale occurred within 1,000 feet of a school because the measuring device used to determine the distance was not properly calibrated. Over Brown's objection, the state recalled Detective Blunk who testified about the steps he took to check the calibration of the measuring device. Detective Blunk had previously testified that he used this measuring device to determine the distance from the drug sale to the school to be 791 feet.
In response to Brown's objection to Detective Blunk being recalled as a witness for the state, the trial court stated:
 Well, number one, the primary thing is the case wasn't rested. If the plaintiff had rested, then he'd be out of luck and I would just reduce the thing to a fifth degree felony. But, I'm going to overrule the objection at this time primarily because the State has not rested and they did previously reserve the right to recall Detective Blunk, so that's the story, I guess. Exceptions to the defendant. Let's go.
The trial court determined that because the state had not rested case, the state's case was not closed for purposes of Crim.R. 29(A). We find no error in this determination.
Crim.R. 29(A) states in part:
 Motion for acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
In State v. Cutlip (June 28, 1993), Seneca App. No. 13-93-01, unreported, we determined that the state, for purposes of Crim R. 29(A), does not close its case until it rests. There, the trial court permitted the state to put on additional evidence after a defense motion for acquittal, but before the state rested and closed its case. Id. We determined this procedure was without error. Id. The circumstances here are practically identical. Accordingly, the trial court here did not error when it permitted the state to put on additional evidence after Brown's motion for acquittal, but before the state rested and closed its case.
Finally, prior to Brown moving for acquittal, Detective Blunk, had already testified that the second drug sale occurred within 1,000 feet of a school. The basis for his testimony was his familiarity with the Findlay area, reference to an aerial photograph and measurements he made with a measuring wheel. This evidence, even without the additional testimony of Detective Blunk relating to the calibration of the measuring wheel, was sufficient to cause reasonable minds to reach different conclusions as to whether Brown was guilty beyond a reasonable doubt of selling LSD within 1,000 feet of a school. State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184; see also, State v. Manley (1994),71 Ohio St.3d 342, 643 N.E.2d 1107; and State v. Rogers (April 24, 1996), Marion App. No. 9-95-50, unreported. Accordingly, there is no error prejudicial to Brown here.
When a defendant moves for a Crim.R. 29(A) acquittal prior
to the state resting its case, he runs the risk of tipping his hand as to what he may consider an insufficiently proven case. The trial court's refusal to declare the state's case closed merely upon Brown's premature motion for acquittal was not an abuse of discretion and not in error.
Brown's second assignment of error is overruled.
Judgment Affirmed.
 SHAW, P.J., and EVANS, J., concur.
[1] Count two was enhanced to a fourth degree felony because the offense was determined to have been committed within 1,000 feet of a school. See, R.C. §2925.03(C)(5)(b).