OPINION
Defendant, Shawn Cunigan, appeals from his conviction and sentence on two counts of trafficking in cocaine.
The evidence presented at trial by the State demonstrates that in late October 1997 a confidential informant approached members of the Combined Agencies Narcotics Enforcement Unit (C.A.N.E.) with information about a person who was willing to sell a large quantity of crack cocaine. That confidential informant was Anthony Shepherd. The subject of the tip was his cousin, Shawn Cunigan. Shepherd was facing drug charges, and he had agreed to act as a confidential informant for the C.A.N.E. unit, setting up drug buys between cocaine dealers and undercover police officers in exchange for reduction of the charges in his own case.
Shepherd telephoned Cunigan on November 5, 1997, to arrange a drug deal. The buy was scheduled to take place the next day, November 6, 1997, at 8:00 p.m., at the University of Dayton Arena parking lot. Cunigan agreed to sell one ounce of crack cocaine for seven hundred fifty dollars. Shepherd telephoned Cunigan on November 6, 1997, at which time Cunigan said he had but one half-ounce of crack to sell, but could obtain more if Shepherd would accompany him. Shepherd subsequently telephoned Cunigan again that day and told him the one-half ounce he had available would be enough.
At 8:00 p.m. on November 6, 1997, as Shepherd and an undercover C.A.N.E. officer, Det. Williams, waited inside Shepherd's car in the U.D. Arena parking lot, Cunigan arrived. Cunigan got into the back seat of Shepherd's car, pulled out a bag containing 11 grams of crack cocaine, and handed it to Shepherd. Williams then handed Cunigan four hundred dollars. Cunigan then pulled out bags containing powder cocaine and marijuana, and offered to sell these substances to Williams, who declined.
Williams asked Cunigan if he could get five ounces of crack cocaine to sell him by next week. Cunigan responded that he could "pretty much do anything you want." Williams and Cunigan then exchanged pager numbers, and Cunigan indicated that Williams could contact him for future drug sales.
About one week later, on November 12, 1997, Williams called Cunigan to arrange another drug deal. Cunigan agreed to sell five ounces of crack cocaine to Williams for four thousand dollars. The buy was scheduled to take place the next day, November 13, 1997, at 8:00 p.m. at the U.D. Arena parking lot.
On November 13, 1997, after Williams had paged him, Cunigan arrived at the U.D. Arena parking lot at 8:00 p.m. Cunigan did not have the cocaine with him. However, Cunigan used Williams' cell phone to make several calls making arrangements to obtain the cocaine. Cunigan then left. One hour later Cunigan returned and handed Williams two large balls of crack cocaine, which together weighed over ninety one grams. Williams then gave Cunigan four thousand dollars.
As Cunigan attempted to leave the parking lot he was apprehended by waiting police officers. A subsequent search of Cunigan's vehicle revealed additional drugs underneath the seat. When interviewed by police, Cunigan revealed both his normal supplier for cocaine and a different supplier he had used that particular night.
Cunigan was subsequently indicted on one count of trafficking in cocaine in an amount between ten and twenty-five grams, R.C.2925.03(C)(4)(a), and one count of trafficking in cocaine in an amount between twenty-five and one hundred grams, R.C.2925.03(C)(4)(f). A jury trial commenced on July 12, 1999.
The defense witnesses at trial were defendant Cunigan and the informant, Anthony Shepherd. Their testimony demonstrates that Cunigan and Shepherd are first cousins who are very close. They have known each other all their lives, and they talk almost every day. They grew up together and are like brothers, with Shepherd being six years older. Cunigan is easily influenced by Shepherd and trusts him.
Cunigan admitted that he had a record of selling cocaine, but insisted that he was no longer doing so when he was contacted by Shepherd. Cunigan was then trying to get his life in order, and was working as a promoter of church festivals. When Shepherd first approached Cunigan about selling him some crack cocaine, Cunigan was reluctant, and initially told Shepherd that he didn't want anything to do with it, that he doesn't do that anymore, and that he was finished with that lifestyle. Shepherd persisted, however, and continued calling Cunigan, asking him to sell him some crack cocaine. Finally, Cunigan gave in and agreed to sell crack cocaine to Shepherd because Shepherd had "asked me too many times."
At the conclusion of the trial the jury found Cunigan guilty of both charges. The trial court sentenced Cunigan to terms of imprisonment totaling eighteen years.
From his conviction and sentence Cunigan has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE DEFENDANT-APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 AND 16 OF THE OHIO CONSTITUTION BY TRIAL COUNSEL'S FAILURE TO REQUEST A JURY INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF ENTRAPMENT.
 Cunigan argues that the evidence presented in this case supports the affirmative defense of entrapment, and that his trial counsel performed in a constitutionally deficient manner by failing to request a jury instruction on entrapment.
A two-part test is used to judge the quality of representation by trial counsel in a criminal case. Stricklandv. Washington (1984), 466 U.S. 668. In commenting upon thatstandard the Ohio Supreme Court in State v. Bradley (1989),42 Ohio St.3d 136, 142, noted:
 "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688, 104 S.Ct. at 2064. The court recognized that there are "* * * countless ways to provide effective assistance in any given case. * * *" Id. at 689, 104 S.Ct. at 2065. Therefore, the court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential. * * *" Id. In addition, "[b]ecause of the difficulties inherent in making the evaluation, a court must [538 N.E.2d 380] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981)." Strickland, supra, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694.
 "Entrapment is the conception and planning of an offense by an officer, and its procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer." Sorrells v. United States (1932), 287 U.S. 435, 454 (Roberts, J., separate opinion). Because entrapment is an affirmative defense, the defendant bears the burden of its proof by a preponderance of the evidence. R.C. 2901.15(C)(2). State v. Doran (1983), 5 Ohio St.3d 187.
Entrapment is established where the criminal design originates with officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute.Doran, supra. However, entrapment is not established whengovernment officials merely afford opportunities or facilities forthe commission of the offense and it is shown that the accused waspredisposed to commit the offense. Id. Under the subjective testfor entrapment adopted by the Ohio Supreme Court in Doran, supra, the focus is upon the predisposition of the accused to commit the offense, rather than the nature of the inducements offered by law enforcement officials. Id.; State v. Singerman (July 14, 1995), Montgomery App. No. 14497, unreported.
The Supreme Court in Doran outlined five non-exclusive factors that would be relevant in determining the predisposition of the accused:
 (1) the accused's previous involvement in criminal activity of the nature charged;
 (2) the accused's ready acquiescence to the inducements offered by the police,
 (3) the accused's expert knowledge in the area of the criminal activity charged,
(4) the accused's ready access to contraband, and
 (5) the accused's willingness to involve himself in criminal activity.
 A trial court must fully and completely instruct the jury on all matters of law, including defenses which are raised by the evidence and necessary for the jury to weigh in order to discharge its duty as the trier of facts. State v. Comen (1990), 50 Ohio St.3d 206; State v. Sneed (1992), 53 Ohio St.3d 3; State v. Williford (1990), 49 Ohio St.3d 247. A claim of entrapment merits a jury instruction on the defense that entrapment provides, provided there is sufficient evidence of entrapment. State v. Birns (1967), 10 Ohio App.2d 103.
On the record before us, the evidence presented by Defendant Cunigan and the confidential informant, Anthony Shepherd, was sufficient to raise the defense of entrapment. If believed, the evidence demonstrates that Cunigan was reluctant at first to sell cocaine, but eventually gave in as a result of inducements which consisted of repeated solicitations to sell drugs by Cunigan's cousin, with whom Cunigan was close. Had a jury instruction on entrapment been timely requested by defense counsel, we believe the trial court would have been duty bound to give that instruction. Defense counsel's failure to request an entrapment instruction in this case constitutes a substantial violation of counsel's essential duties to his client, that is, constitutionally deficient performance.
However, "prejudice," as that term is defined by Strickland,has not been demonstrated. The evidence presented by the State,particularly the testimony by Det. Williams, suggests that Cuniganwas a willing participant in these drug sales and was predisposedto commit these crimes. We shall examine Cunigan's predispositionto sell cocaine in the context of the five Doran factors.
First with respect to his previous involvement in criminal activity of this same kind, Cunigan admitted at trial that he has an extensive past history of selling cocaine.
Second, with respect to Cunigan's ready acquiescence to the inducements offered by police, while Cunigan was initially reluctant to sell cocaine to Shepherd, Cunigan gave in according to his own testimony because he was tired of Shepherd repeatedly asking. No other inducements were made. Cunigan twice sold crack cocaine to Det. Williams, and he consummated each of those sales within twenty-four hours after those deals had been arranged. The second sale Cunigan arranged with Det. Williams without Shepherd's participation.
Third, with respect to Cunigan's expert knowledge in selling cocaine, Cunigan's past history, his use of street names for the drugs, and his establishing certain prices for certain quantities amply demonstrates his expertise.
Fourth, with respect to Cunigan's ready access to this contraband, on the first sale Cunigan produced one-half gram of crack cocaine for sale within twenty-four hours after the deal had been arranged. Cunigan also produced powder cocaine and marijuana for sale, demonstrating his access to those drugs as well. On the second sale, Cunigan produced ninety-two grams of crack cocaine in approximately one hour after he made two telephone calls.
Finally, Cunigan's willingness to involve himself in criminal activity is demonstrated by his two sales of crack cocaine to Det. Williams. Moreover, when Cunigan and Williams exchanged pager numbers after the first sale, Cunigan told Williams that he could reach him for future drug sales through his pager.
Given this evidence, we believe a reasonable jury would conclude that Cunigan had failed to prove he was not predisposed to commit this offense. Even had defense counsel requested and obtained a jury instruction on entrapment, we cannot say that there exists a reasonable probability that Cunigan would have been acquitted. Prejudice has not been demonstrated, and thus ineffective assistance of counsel has not been demonstrated.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE ABSENCE OF A JURY INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF ENTRAPMENT RESULTED IN A MISCARRIAGE OF JUSTICE AND CONSTITUTES PLAIN ERROR.
 Cunigan argues that the trial court's failure to instruct the jury on the affirmative defense of entrapment resulted in a manifest miscarriage of justice, because it precluded the jury from considering whether his otherwise illegal conduct in selling crack cocaine to an undercover police officer, which he admitted, was excusable or justified.
Cunigan's failure to request a jury instruction on entrapment and his further failure to object to the trial court's failure to give such an instruction constitutes a waiver of any error in that regard, unless the error rises to the level of "plain error."State v. Underwood (1983), 3 Ohio St.3d 12; State v. Frazier(1995), 73 Ohio St.3d 323. Plain error does not exist unless itcan be said that but for the error the outcome of the trialclearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91.
As we noted in our disposition of the first assignment of error, the evidence presented by the State, if believed, demonstrates that Cunigan was predisposed to commit these offenses. Thus, we cannot not say that had the trial court instructed the jury on the defense of entrapment, Cunigan clearly
would have been acquitted of these offense. Plain error has not been demonstrated.
The second assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and WOLFF, J., concur.