[Cite as *State v. Koehler*, 2013-Ohio-651.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 16-12-09

    v.

LONNIE L. KOEHLER, JR.,           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Trial Court No. 11-CR-09

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 25, 2013

APPEARANCES:

    *Adam C. Stone* for Appellant

    *Douglas D. Rowland* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Lonnie Koehler ("Koehler") appeals the July 2, 2012, judgment of the Wyandot County Common Pleas Court sentencing Koehler following a jury trial conviction for the crime of Importuning, in violation of R.C. 2907.07(D)(2), a felony of the fifth degree. For the reasons that follow, the trial court's judgment is affirmed in part and reversed in part and remanded to the trial court.

{¶2} On August 18, 2011, Koehler was indicted for Importuning in violation of R.C. 2907.07(D)(2), a felony of the fifth degree. (Doc. 2). The indictment alleged that Koehler

> **did solicit another by means of a telecommunications device * * * to engage in sexual activity with * * * Koehler * * * and the other person was a law enforcement officer posing as a person who is thirteen years of age or older, but less than sixteen years of age, and * * * Kohler believed that the other person was thirteen years of age or older, but less than sixteen years of age, or was reckless in that regard, and * * * Kohler was four or more years older than the age the law enforcement officer assumed in posing as the person who was thirteen years of age or older, but less than sixteen years of age[.]**

(Doc. 2).

{¶3} On September 1, 2011, Koehler was arraigned and pled not guilty to the charge. (Doc. 9).

{¶4} On February 7, 2012, the case came before the court for a change of plea hearing, but once Koehler was notified that if he pled guilty to the charge he

would be designated a Tier I sex offender and thus have to relocate from his home due to living within 1000 feet of a school, Koehler did not wish to change his plea. (Doc. 18). The case was therefore set for jury trial. (*Id.*)

{¶5} On April 12, 2012, the State filed proposed jury instructions. (Doc. 19).

{¶6} On May 14, 2012, the day before the jury trial was scheduled to begin, Koehler filed proposed jury instructions requesting an instruction on "Unlawful Entrapment." (Doc. 22).

{¶7} On May 15, 2012, the jury trial was held. At the trial, the State called one witness in its case-in-chief, Detective Tyler Howell. Detective Howell testified that he had worked for the Upper Sandusky Police Department since 2004. (Tr. at 84). Detective Howell testified that the police department had received complaints from citizens of the community and the county who were getting unwanted text messages, the majority of which were "sexual in nature." (Tr. at 86).

{¶8} Detective Howell testified that after Koehler was identified as the person making the messages, the Chief of Police addressed the complaint with Koehler. (*Id.*) According to Detective Howell, some time passed, and the messages started occurring again. (*Id.*) Detective Howell testified that he

believed the person sending the text messages had no idea who was receiving the messages as the recipients ranged in age from 8 to 80.  (Tr. at 87).

{¶9} Detective Howell testified that once the text messages started up again, he created the alias of "Jocelyn," a fifteen-year-old girl, and sent a message to the phone number that had been sending out the messages, a phone stipulated to be Koehler's.  (Tr. at 87-88).  Detective Howell testified that posing as Jocelyn, he claimed that his sister had received one of the text messages, that "Jocelyn" had seen her sister's phone and as "Jocelyn," Detective Howell began conversing with Koehler. (Tr. at 88); (State's Ex. 2).

{¶10} Early in the text-conversation between Detective Howell and Koehler, Howell revealed that his alias "Jocelyn" was a Freshman in high school, that she could not yet obtain a driver's license, and that she was prevented by her father from dating a high-school Senior.  (State's Ex. 2).  Koehler, who was 27 at the time of the offense, repeatedly asked "Jocelyn" to send him a picture, but "Jocelyn" delayed, making excuses as to why a picture could not immediately be provided.  (Tr. at 88); (State's Ex. 2).

{¶11} Still early in the course of the conversation "Jocelyn" specifically revealed to Koehler that she was only fifteen years old, stating this fact to Koehler. (State's Ex. 2).  Koehler continued to ask for a picture of "Jocelyn" after "Jocelyn" identified her age, including requesting a naked picture.  (*Id.*)  Subsequently,

before "Jocelyn" sent a picture to Koehler and without a request for an explicit photo, Koehler escalated the matter by sending multiple pictures of his penis to "Jocelyn." (*Id*.) After Koehler sent pictures of his penis to "Jocelyn," Koehler said "0f course its hard. first time seeing 0ne? think its hard? 0utta feel it."[1] (State's Ex. 2).

{¶12} Detective Howell testified that posing as "Jocelyn" he continued to exchange messages with Koehler over the next day and a half. Detective Howell testified to multiple messages sent by Koehler indicating Koehler's desire to engage in sexual acts with "Jocelyn." (Tr. at 111-18); (State's Ex. 2). Following this escalation, Detective Howell testified that he wished to wrap the situation up as soon as possible, fearing that Koehler might be engaging in similar conversations with other real girls in the area, and attempting to meet with them. (Tr. at 111-118).

{¶13} Detective Howell testified that he then attempted to get Koehler to meet with "Jocelyn," but Koehler stated that he could not meet with her due to work. (Tr. at 127-135). When Koehler would not meet with "Jocelyn," Detective Howell testified that he tracked Koehler down when Koehler was walking to work and confronted Koehler about the text messages. (Tr. at 127-135). According to

---

[1] As pointed out by Detective Howell, Koehler's text messages all used zeros rather than "o"s, though it was unclear why. All cited text messages herein are reprinted with their original spelling, grammar and typographical errors.

Detective Howell, Koehler eventually admitted to owning the phone and sending the text messages to "Jocelyn." (Tr. at 134-35).

{¶14} At the conclusion of Detective Howell's testimony, the State rested. Following the denial of Koehler's Criminal Rule 29 motion for acquittal, Koehler took the stand in his own defense.

{¶15} Koehler testified that he did not dispute that he sent the text messages in this case. (Tr. at 160). Koehler did, however, dispute that he had any intent to actually engage in any sexual activity with an underage girl. Koehler testified that he "thought someone was playing games with him." (Tr. at 160). Koehler testified that he thought "Jocelyn" was actually the boyfriend or husband of someone he had randomly texted and was looking to hurt him. Koehler testified that he desired to mess with the person on the other end of the phone, so he played along. (Tr. at 160-64). On cross-examination, however, Koehler testified, "I was thinking it was, you know, somebody perhaps wanting to lure me, to beat me up or whatever. I wasn't 100 percent sure that this was a girl I was talking to." (Tr. at 172).

{¶16} Following Koehler's testimony, the defense rested. Ultimately the jury found Koehler guilty of Importuning as charged in the indictment. The trial court ordered a pre-sentencing investigation and set the matter for a hearing on Koehler's sex offender classification and for a sentencing hearing.

{¶17} On June 27, 2012, Koehler was designated as a Tier I sex offender and notified that he would have to register as a sex offender.

{¶18} On July 2, 2012, the trial court held a sentencing hearing. At the sentencing hearing Koehler was sentenced to three years of community control, the first year of which would be under intensive supervision. Pursuant to R.C. 2929.16(A)(2), the court imposed a 180 day residential sanction in the Wyandot County Jail on Koehler. Upon Koehler's release, the court ordered that Koehler be subject to an indefinite period of GPS monitoring at his expense.

{¶19} It is from this judgment that Koehler appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF ENTRAPMENT WHERE THERE WAS SUFFICIENT EVIDENCE IN THE RECORD TO DO SO**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT COMMITTED PLAIN ERROR, IN CONTRAVENTION OF R.C. §2929.13(L) WHEN IT SENTENCED APPELLANT TO AN INDEFNITE PERIOD OF GLOBAL POSITIONING DEVICE MONITORING AT THE APPELLANT'S EXPENSE.**

*First Assignment of Error*

{¶20} In Koehler's first assignment of error, he argues that the trial court erred by failing to instruct the jury on the affirmative defense of "unlawful entrapment." Specifically, Koehler argues that sufficient evidence was presented

warranting a jury instruction on entrapment, but the court failed to give such an instruction despite Koehler's request.

**{¶21}** Generally, jury instructions are matters left to the sound discretion of the trial court. *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). When reviewing a lower court's decision not to instruct a jury in a certain manner, an appellate court should apply the abuse of discretion standard. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion connotes more than merely an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶22}** Under Ohio Crim.R. 30(A), a trial court is required to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. When reviewing the record for sufficient evidence to support a proposed jury instruction, an appellate court should determine "whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *State v. Risner*, 120 Ohio App.3d 571, 574 (3d Dist.1997).

**{¶23}** Entrapment is an affirmative defense that a defendant has the burden of proving by a preponderance of the evidence. R.C. 2901.05(A); *State v. Doran*, *infra*. It exists "where the criminal design originates with the officials of the

government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute, the defense of entrapment is established and the accused is entitled to acquittal." *State v. Doran*, 5 Ohio St.3d 187, 192 (1983), citing *Sherman v. U.S.*, 536 U.S. 369, 372, 78 S.Ct. 819 (1958). Entrapment is not established, though, when government officials "merely afford opportunities or facilities for the commission of the offense," and the accused was predisposed to commit the offense. *Id.,* quoting *Sherman*, 356 U.S. at 372. While not exhaustive, the following facts are relevant to the accused's predisposition:

> **(1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity.**

*Doran* at 192.

**{¶24}** Koehler argues that he was not predisposed to commit this crime and that law enforcement induced him to commit this act by being "flirtatious." However, Detective Howell testified that Koehler had been sending out random text messages to people in the community, most of which were "sexual in nature."

**{¶25}** Moreover, a review of the text conversations in State's Exhibit 2 illustrates that Koehler almost immediately turned the conversation sexual with

"Jocelyn" and began asking for pictures, including nude pictures, even after "Jocelyn" revealed that she was only 15. The messaging began as follows:

> **[Jocelyn]: Hey is this Lyle**
>
> **[Koehler]: Why?**
>
> **[Koehler]: Why?**
>
> **[Jocelyn]: Lol my older sister was getting some text from you yesterday she said she thought your name was Lyle.**
>
> **[Jocelyn]: I was reading her text…please don't tell her.**
>
> **[Koehler]: u said u want me?**

(State's Ex. 2).

{¶26} Thus before Jocelyn had said anything remotely sexual, Koehler said the phrase, "u said u want me?" After this initial exchange, Koehler began repeatedly asking "Jocelyn" for a picture. "Jocelyn" delayed sending a picture to Koehler and continued the conversation. Early in the conversation, "Jocelyn" made several references that would have identified her as a Freshman in high school, leading to the following exchange where she explicitly stated her age:

> **[Jocelyn]: 15 is that okay you're not old are you**
>
> **[Koehler]: Na n0t t00 0ld. Hm. When u send pic?**

(State's Ex. 2).

{¶27} Even after "Jocelyn" revealed her age, Koehler continued asking for pictures of her. Then, without "Jocelyn" asking for any explicit pictures, Koehler

sent "Jocelyn" multiple pictures of his penis. Once Koehler sent pictures of his penis to "Jocelyn," Koehler said:

> **[Koehler]: Yeah. Its mine. Ur m0re than welcome to c f0r urself. W0uld u put it in ur m0uth 0r play with it?**

(State's Ex. 2).

{¶28} Koehler continued to send "Jocelyn" sexually related text messages including:

> **[Koehler]: U c0uld just take ur t0p 0ff. pls?**

> **[Koehler]: I am s000 h0rny.**

> \* \* \*
> **[Koehler]: Pic pls? l00k it don't have t0 be u naked. It can just be y0u t0pless.**

> \* \* \*

> **[Koehler]: Rite. thats fine. l00king to h00k up sumtime? i w0uld like t0 sh0w u the r0pes. U can even play with me.**

> \* \* \*

> **[Koehler]: Id l0ve t0 undress y0u. take the pic myself.**

> \* \* \*

> **[Koehler]: Yeah. d0 u have nice breasts?**

(State's Ex. 2). It was only after Koehler sent all of these messages that "Jocelyn" became more flirtatious with Koehler and used the word "horny" in an attempt to

get Koehler to meet with Detective Howell as Koehler was becoming evasive toward a meeting.

{¶29} Thus the evidence presented was that Koehler had sent out many random text messages to people he did not know, most of which were sexual in nature. When Koehler received a message from a police officer posing as a fifteen year old girl, Koehler turned the conversation sexual, sent pictures of his penis to "Jocelyn," repeatedly requested naked pictures, and asked "Jocelyn" to "hook up." Under these circumstances, we do not find that it was an abuse of discretion for the court to decline to give an instruction on entrapment as law enforcement merely provided an opportunity for Koehler to commit the crime. Accordingly, Koehler's first assignment of error is overruled.

*Second Assignment of Error*

{¶30} In his second assignment of error, Koehler argues that the trial court erred by imposing an indefinite period of GPS monitoring upon him after it had already imposed a six month jail sentence as a residential community control sanction.

{¶31} R.C. 2929.13(L) governs the monitoring of sexually oriented offenders by GPS devices. It reads,

> **(L) At the time of sentencing an offender for any sexually oriented offense, if the offender is a tier III sex offender/child-victim offender relative to that offense and the offender does not serve a prison term or jail term, the court may require that the**

**offender be monitored by means of a global positioning device. If the court requires such monitoring, the cost of monitoring shall be borne by the offender. If the offender is indigent, the cost of compliance shall be paid by the crime victims reparations fund.**

R.C. 2929.13(L).

{¶32} Pursuant to this statute, the prerequisites for being placed upon GPS monitoring are that a defendant be designated a Tier III sex offender and the defendant should not be sentenced to a jail term. In this case, it is undisputed that Koehler was designated as a Tier I sex offender and sentenced to six months in jail as a residential community control sanction. Thus he would not meet either prerequisite for a period of GPS monitoring. The State concedes this point in its brief to this court, adding that the State improperly requested GPS monitoring at the sentencing hearing. Accordingly, based upon the statute, the facts of this case, and the concession by the state, Koehler's second assignment of error is sustained.

{¶33} For the foregoing reasons, the judgment of the Wyandot County Common Pleas Court is affirmed in part and reversed in part, and remanded with instructions to vacate the improper GPS monitoring portion of the sentence.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**