This timely appeal arises following a jury verdict convicting Diane McGhee (appellant), of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1). For the following reasons, the decision of the trial court is affirmed.
 I. FACTS
The record reflects that on July 28, 1995, the Jefferson County Prosecutor's Office was in the course of an investigation into illegal drug trafficking activity in Jefferson County. This investigation, entitled Operation Stern Message, was coordinated by Lieutenant John Myers (Myers) of the prosecutor's office. As part of this plan, Myers employed the services of David McQuisition (McQuisition) whose job was to act as a special operative individual. McQuisition's task was to drive his vehicle around the city of Steubenville and make crack cocaine purchases from individuals. McQuisition had specific instructions to drive around the city until he was flagged down by individuals wishing to make crack sales.
The record reflects that on the day in question, McQuisition was performing his assignments as ordered by Myers. At approximately 2:16 p.m., McQuisition was flagged down by appellant. At that time McQuisition stopped his vehicle and appellant entered with an open container of alcohol. A discussion ensued between the two individuals during which time McQuisition ordered $20 worth of crack cocaine. At the direction of appellant, McQuisition proceeded to a location in the city of Steubenville at which point appellant was given a $20 bill and exited the vehicle. Approximately ten minutes later, appellant returned to the vehicle with a substance which was later confirmed by laboratory analysis to be .06 grams of cocaine. During the entire course of these events, a video recorder hidden inside the vehicle was directed towards the passenger area of the vehicle to record the events as they transpired.
As a result of the above described occurrence, appellant was indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) as well as an open container violation contrary to R.C. 4301.62. Due to the fact that the open container charge was a minor misdemeanor, only the aggravated trafficking offense was submitted to the jury for consideration.
Following appropriate discovery between the parties, this matter proceeded to a one day jury trial on October 31, 1995. After deliberating briefly, the jury returned a unanimous verdict of guilt on the drug trafficking charge. Appellant was immediately sentenced by the trial judge to a definite term of incarceration of two years. A timely notice of appeal was filed by appellant on November 29, 1995.
Appellant raises two assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "WAS THE APPELLANT ENTRAPPED INTO COMMITTING A CRIME?"
Appellant contends that she had no intention of selling crack cocaine until she was approached by the undercover agent. Moreover, appellant argues that any intention to sell crack was created by the state and implanted in her mind. It is appellant's view that the state caused the crime to occur and as such she was entrapped into committing the offense.
 A. APPLICABLE LAW
The seminal case in Ohio jurisprudence in regards to issues of entrapment is State v. Doran (1983), 5 Ohio St.3d 187. According to Doran, entrapment occurs "where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." Id. at 192. However, entrapment is not established when the government officials "merely afford opportunities or facilities for the commission of the offense and its shown that the accused was predisposed to commit the offense." Id.
A non-exhaustive list of relevant factors related to an analysis of an individual's predisposition is as follows: 1) accused's prior involvement in similar criminal activity; 2) accused's ready acquiescence to the inducements offered by the government official; 3) accused's expert knowledge in the subject matter of the criminal activity; 4) accused's access to involved contraband; and 5) accused's willingness to become involved in the criminal activity. Id. As such, the focus is on a subjective analysis of the individual's predisposition towards the criminal activity. Furthermore, the defense of entrapment is characterized as an "affirmative defense" as it deals with one's "excuse or justification" for committing the offense. Id. at 193. Since entrapment is an affirmative defense, R.C. 2901.05(A) provides that the accused has the burden of proving the defense by a preponderance of the evidence. Both Doran, supra and R.C. 2901.05(C)(2) determine that it is in fact fair to require the accused to adduce evidence supporting a defense of entrapment. Id.
 B. ANALYSIS
A review of the record finds no evidence to support a finding that appellant was entrapped into committing the offense of trafficking drugs. On the contrary, evidence reflects that in fact appellant had a predisposition to commit the charged offense. A review of the non-exhaustive list of factors outlined in Doran supply strong support for this conclusion on predisposition. While no evidence was produced as to appellant's past involvement in drug activity, all other factors are strongly supported by the record.
First, not only did appellant acquiesce to the undercover agent's requests but she went so far as to initiate the majority of actions leading to the final sale. Testimony provided by McQuisition indicates that he had no specific target when he began driving throughout Steubenville. Instead, standard policy established by Myers required that he wait to be waived down and approached by an individual looking to make a sale. McQuisition's testimony supports a finding that appellant in fact did waive his car down and entered the vehicle. After entering the vehicle the discussion ensued regarding a purchase of $20 worth of crack cocaine. At that point, appellant did not flee the vehicle but rather directed McQuisition to drive to a location where she could obtain the product. Approximately ten minutes after leaving the vehicle, appellant voluntarily returned with the requested crack cocaine. Testimony from McQuisition further indicates that appellant then requested a portion of the rock for her own use.
Nothing in the record would persuade this court to find that the events which transpired between McQuisition and appellant were anything but voluntary. There has been no testimony or evidence from the videotape recording of the transaction to indicate that appellant was coerced, bribed or threatened into performing the crack sale.
Second, the record indicates sufficient proof that appellant had "expert knowledge" in the subject matter of the criminal activity. McQuisition provided various indicators in his testimony that appellant was well versed in the street slang involved with the sale of crack cocaine. At the initiation of the sale, McQuisition indicated to appellant that he wished to purchase a "twenty." The use of this term indicates that an individual wants to buy a rock of cocaine valued at twenty dollars. Upon making his request, appellant did not question McQuisition but instead requested that he drive to a different location in the city so she could acquire the requested product. McQuisition further stated that upon delivering the crack cocaine, appellant indicated that she did not "pinch" him. In this instance appellant again utilized street slang to indicate to McQuisition that she had not taken part of the crack for her own use. Such instances denote that appellant had a working knowledge of the drug trade beyond that of a lay person.
Next, appellant exhibits a ready access to the contraband involved in the commission of the crime. After McQuisition requested a "twenty", appellant directed him to a specified location at which she exited the car. According to McQuisition, appellant returned with the requested product in under ten minutes. The time frame is corroborated by the videotaped recording.
Finally, it is clear that appellant displayed a willingness to become involved in the crime in question. Testimony at trial shows that in fact appellant initiated the sequence of events leading to the criminal offense by flagging down McQuisition. Furthermore, appellant voluntarily entered the vehicle and directed McQuisition to a location where she could obtain crack cocaine. Appellant finalized the sale when she returned to the vehicle.
All of these factors taken collectively provide overwhelming support for a finding that the state did not induce appellant to commit a crime which she was not inclined to perform. Appellant was merely afforded an opportunity to complete an offense she was already predisposed to commit. No evidence contrary to such a determination has been provided in the record to persuade this court to find otherwise. As such, appellant's first assignment of error lacks merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error reads:
 "WAS THE CONVICTION OF THE APPELLANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE?"
In appellant's second assignment of error, she indicates that the character of the evidence provided by the state was so confusing that it created a verdict which was against the manifest weight of the evidence. Additionally, appellant generally alleges that conflicts existed within the testimony of McQuisition without specifying any particular instance of conflict.
 A. APPLICABLE LAW
When reviewing a manifest weight of the evidence claim, we must determine if there exists enough credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Martin (1983), 20 Ohio App.3d 172, 175. The Ohio Supreme Court provided additional guidance on these issues in State v. Thompkins (1997), 78 Ohio St.3d 380 when it said:
 "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " Id. at 387.
Moreover, in both criminal and civil cases, the credibility of witnesses is primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 231. As such, an appellate court must give deference to any determination of the credibility of witnesses made by the trier of fact. Deference should be given to the trier of fact as it is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing credibility. Seasons Coal Co., Inc. v. City of Cleveland
(1984), 10 Ohio St.3d 77, 80.
 B. ANALYSIS
In the case sub judice, appellant was convicted of trafficking in drugs in violation of R.C. 2925.03, which states in relevant part:
 "(A) No person shall knowingly do any of the following:
 (1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount."
In support of its case against appellant, the state offered testimony from Myers, the coordinator of the undercover operation, and McQuisition, the undercover agent which completed the purchase from appellant. Additionally, the videotape recording of the transaction with appellant was played for the jury in order to corroborate the witness testimony.
Through these presentations it was shown that appellant took the initiative to attract McQuisition's attention and get him to stop his vehicle. From that point, appellant entered the vehicle and a discussion took place regarding the purchase of crack cocaine. Upon appellant's request, McQuisition drove to a location in Steubenville for appellant to acquire the drugs. Having the requested drugs in hand, appellant entered the undercover vehicle and gave them to McQuisition. Scientific testing determined that in fact the substance sold to the undercover agent was cocaine. While appellant takes issue with the fact that the videotape does not show the actual hand to hand exchange, witness testimony establishes that it did in fact occur.
All testimony and evidence in the record supported the state's position that appellant did in fact commit the charged offense. No contrary evidence was provided by appellant to refute this finding. While cross-examination did occur of the state's witnesses, the primary determination of the credibility of this witness testimony lies in the hands of the jury.
Having reviewed the entire record and weighed the evidence and all reasonable inferences thereof, this court cannot find that the trier of fact created a miscarriage of justice thereby requiring a reversal of the conviction. All evidence of record favors and supports a finding of guilt on the offense at issue. Furthermore, the jury was in the best position to evaluate the credibility of the witnesses and the value of the contents of the videotape. We are unable to find any evidence of record to substantiate appellant's unfounded assertions that the evidence was so confusing as to lead the jury to an inappropriate conclusion. Likewise, we are unable to find the alleged conflicts within McQuisition's testimony which would render it unreliable.
For the foregoing reasons, appellant's second assignment of error lacks merit. Therefore, the decision of the trial court is affirmed.
Hon. Joseph J. Vukovich, Hon. Edward A. Cox, Hon. Cheryl L. Waite, JUDGES.
Cox, J., concurs in judgment only.
Waite, J., concurs.
APPROVED:
 --------------------------- JOSEPH J. VUKOVICH, JUDGE