[Cite as *State v. Arnold*, 2017-Ohio-209.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                     Court of Appeals No. L-15-1126

       Appellee                             Trial Court No. CR0201401915

v.

Marvin Arnold                                **DECISION AND JUDGMENT**

       Appellant                             Decided:  January 20, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Jerry P. Purcel, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas that found appellant Marvin Arnold guilty of one count of insurance fraud, a felony

of the fourth degree.  For the following reasons, the judgment of the trial court is

affirmed.

{¶ 2} Appellant Arnold was employed by the city of Toledo from July 2002 until September 2013. On June 6, 2014, appellant was indicted on one count of insurance fraud in violation of R.C. 2913.47(B)(1) and (C). The matter came for trial before a jury on February 25, 2015, and the following testimony was heard.

{¶ 3} The state called Calvin Brown, who was the commissioner of the city's department of human resources from August 2002 through August 2013. Brown testified that ex-spouses were not eligible for benefits through the city unless the ex-spouse paid the premiums through COBRA. Brown testified that on July 3, 2002, appellant applied for family health care coverage to begin August 12, 2002. Appellant indicated on the application, which he signed, that he was married and listed his wife Carlene Arnold ("Carlene") and two minor children as dependents. Appellant supported the application with a 1999 federal income tax return indicating that he and Carlene had filed under married status.

{¶ 4} Based on appellant's application, benefits were extended to Carlene. The city did not initially investigate the veracity of the application when it was submitted in 2002 and Carlene availed herself of the health insurance benefits. Over the years, the city made payments on her dental, medical and prescription expenses. In 2011, however, the city conducted a full dependent audit of its employees and identified several employees who were potentially wrongfully using the city's health insurance. At that time, appellant provided the city with a 2010 income tax return indicating that he and Carlene filed as a married couple.

{¶ 5} In 2012, the city's record check indicated that appellant and Carlene had been divorced in 2001 and that Carlene had been receiving benefits from at least 2006 forward. Brown testified that to the best of his knowledge appellant never informed the city that he was not legally married to Carlene. On August 27, 2013, the city sent a letter to appellant advising him that the city had become aware that he was divorced from Carlene on October 17, 2001, and that his ex-wife had been using the city's health care benefits after the divorce was final. The information was given to the city's employee relations staff, which began further investigation into the matter, leading to disciplinary proceedings against appellant. Appellant was charged with six counts including theft of city benefits, falsification of city records and gross misconduct. Following a hearing held on September 11, 2013, appellant was found guilty of all six counts. A recommendation was then filed to terminate appellant from his city of Toledo employment.

{¶ 6} Brown testified that appellant was offered the opportunity to pay the city for the benefits received by Carlene but appellant declined. He further testified that after 2011, city employees paid a premium for their health insurance. Further, the city provided coverage for domestic partners if the employee provided documentation that there was a true relationship and registered with the city.

{¶ 7} The state next called Toledo Police detective Blake Watkiss, who investigated appellant upon a request from the city. Through his investigation, Watkiss learned that when appellant was hired he was divorced from Carlene. Watkiss obtained a copy of a marriage certificate showing that appellant married Carlene on September 5,

3.

1986. He further testified that he obtained a certified copy of a divorce decree journalized October 22, 2001, indicating that the marriage between appellant and Carlene was terminated. During the course of the investigation, appellant provided Watkiss with a certified copy of another marriage certificate showing that appellant and Carlene re-married on September 3, 2013. Watkiss clarified that the second marriage occurred after his investigation of appellant had begun. As part of the investigation, Watkiss developed spreadsheets detailing health care benefits totaling $46,643.23 paid by the city on behalf of Carlene.

{¶ 8} Watkiss eventually interviewed appellant and testified that appellant appeared contrite and seemed to be forthcoming during the interview. Arnold told Watkiss that he did not realize he was non-compliant or that he was involved in anything improper. Watkiss further testified that appellant said the city was partly to blame for not discovering the problem much sooner.

{¶ 9} Miranda Vollmer, formerly with the city's human resources department, testified that she represented the city at the administrative hearing conducted September 11, 2013, pursuant to the allegations brought against appellant. Vollmer testified that the hearing officer concluded in his report dated September 25, 2013, that appellant was guilty of conduct unbecoming a city employee, gross misconduct, theft of city benefits, falsification of city records and failure to properly notify the city of a qualifying event related to health care eligibility. Appellant was terminated from his employment shortly thereafter.

{¶ 10} The city next called Don Czerniak, president of AFSCME Local 7, the union which represented appellant. Czerniak testified that AFSCME Local 7 did not recognize domestic partnerships until 2012. He further testified that prior to the hearing the city proposed a means of resolving the matter whereby appellant would maintain his employment with the city while the city would withhold a portion of each paycheck to reimburse it for benefits paid for Carlene. Appellant acknowledged that he owed the money but did not agree with the amount of proposed withholdings.

{¶ 11} Finally, appellant testified on his own behalf. Appellant acknowledged marrying Carlene in 1986. He stated that in 2001, the couple had marital difficulties and he moved out of their home for approximately two months, during which time Carlene filed for divorce. The complaint for divorce was filed August 2, 2001, and was final on October 17 of that year. The couple eventually resumed living together and approximately four months later, in July 2002, appellant began working for the city. Appellant testified that in his mind he and Carlene were married throughout the time he worked for the city and said that they filed income tax returns each year as "married filing jointly." Further, appellant testified that he "forgot" they had divorced and considered the divorce action to be a "mishap" from which they moved on. When he completed the insurance application with the city in 2002 and marked the box indicating he was married he believed he was married. Appellant acknowledged that child support was withheld from each paycheck and sent to Carlene at the residence they shared shortly after he started working for the city.

5.

{¶ 12} Appellant was found guilty of the offense of insurance fraud. On April 14, 2015, appellant was sentenced to five years community control and ordered to pay $46,643.23 in restitution, among other sanctions.

{¶ 13} Appellant sets forth the following assignments of error:

A. Appellant was denied a fair trial where the state was allowed to present the findings of an administrative hearing conducted pursuant to a collective bargaining agreement to the jury indicating appellant was "guilty on all charges."

B. Appellant was denied the effective assistance of counsel.

C. The trial court erred in failing to grant appellant's motion for acquittal pursuant to Crim.R. 29 and appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence since there was no evidence of his specific intent to defraud the victim.

{¶ 14} In support of his first assignment of error, appellant asserts that he was prejudiced when state's witness Miranda Vollmer was allowed to testify as to the administrative hearing that resulted in findings of guilty as to all charges and termination of his employment. Appellant argues that the jury was left to infer that since another legal body had already found him guilty, the jury's work was "cut and dry."

{¶ 15} We note that appellant did not object at trial to the testimony as to the administrative hearing. An error not raised in the trial court must be plain error for an

6.

appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long, supra.* Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 16} Although the evidence as to the administrative hearing was excludable, we find no plain error as appellant has not demonstrated that the outcome of the trial clearly would have been different but for the allegedly improper actions. As summarized above, appellant did not contest the dates of his divorce, his official hiring by the city or his remarriage to Carlene. He did not dispute the fact that when he applied for benefits from the city for Carlene they were divorced or that he continued to represent himself as married when he was not. Appellant's only defense at trial was that the divorce "slipped his mind." Appellant was not prejudiced by the admission of evidence as to the administrative hearing and, accordingly, we find no plain error.

{¶ 17} Appellant's first assignment of error is found not well-taken.

{¶ 18} In his second assignment of error, appellant asserts he was denied effective assistance of counsel based on counsel's failure to object to the testimony regarding the administrative hearing and counsel's failure to seek an instruction on the affirmative defense of entrapment.

7.

{¶ 19} In order to prove ineffective assistance of counsel, appellant must show defense counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the results of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed 2d 674 (1984). In Ohio, a properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶ 20} As to appellant's first argument, based on our finding above that appellant was not prejudiced by the admission of evidence regarding the administrative hearing, we are unable to find that counsel was ineffective for failing to object thereto. This argument is without merit.

{¶ 21} Appellant also argues that counsel was ineffective for failing to ask for a jury instruction on the defense of entrapment. This argument is without merit. The affirmative defense of entrapment "is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran*, 5 Ohio St.3d 187, 449 N.E.2d 1295 (1983), paragraph one of the syllabus. The burden of production and the burden of proof, by a preponderance of the evidence, is on the defendant. *Doran, supra*; R.C. 2901.05(A).

{¶ 22} In this case, appellant is not able to point to any evidence in the record that any criminal design originated with the officials of the city of Toledo. There is no evidence that the city encouraged employees to claim benefits for individuals such as

8.

ex-spouses who were not otherwise eligible. Nor did appellant present any evidence that the city "implanted in the mind of an innocent person" the disposition to commit insurance fraud. In summary, there was simply no support for trial counsel to request a jury instruction on entrapment.

{¶ 23} Based on the foregoing, we find that trial counsel's performance cannot be considered ineffective pursuant to the standards set forth in *Strickland, supra.* Accordingly, appellant's second assignment of error is not well-taken.

{¶ 24} In support of his third assignment of error, appellant asserts that the trial court erred by denying his Crim.R. 29 motion for acquittal and that his conviction was not supported by sufficient evidence.

{¶ 25} Crim.R. 29(A) provides that, upon motion of a defendant or on its own motion, after the evidence on either side is closed, the trial court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense charged. Further, when considering whether the state provided legally sufficient evidence to support a conviction, an appellate court must examine all of the evidence admitted at trial and determine whether the evidence, if believed by the trier of fact, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

9.

{¶ 26} Appellant was convicted of insurance fraud in violation of R.C. 2913.47(B)(1), which provides that "No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [p]resent to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance * * * knowing that the statement, or any part of the statement, is false or deceptive * * *."

{¶ 27} This court has thoroughly reviewed the record of proceedings in the trial court, including the testimony as summarized herein. When viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of insurance fraud to be proven beyond a reasonable doubt. The trial court did not err in denying appellant's Crim.R. 29 motion for acquittal and, further, the evidence was sufficient to support his conviction. Appellant's first two arguments are without merit.

{¶ 28} As to appellant's third argument regarding manifest weight of the evidence, the Ohio Supreme Court has summarized the standard as follows:

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

10.

{¶ 29} Considering the evidence as summarized above, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice when it found appellant guilty of insurance fraud.

{¶ 30} Accordingly, appellant's third assignment of error is not well-taken.

{¶ 31} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

James D. Jensen, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE