[Cite as *State v. Alley*, 2024-Ohio-115.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                      Court of Appeals No.  S-23-006

      Appellee                              Trial Court No.  22CR68

v.

Matthew Alley                                 **DECISION AND JUDGMENT**

      Appellant                             Decided:  January 12, 2024

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**ZMUDA, J.**

## I.      Introduction

{¶ 1} This matter is on appeal from the judgment of the Sandusky County Court of

Common Pleas, which, after a jury returned guilty verdicts on all charges, sentenced

appellant, Matthew Alley, to an aggregate minimum prison term of 14 years and an

aggregate maximum prison term of 17 years. For the reasons that follow, we affirm.

## II.    Facts and Procedural Background

{¶ 2} Appellant is an admitted, long-time drug addict, with a prior record that includes drug possession and drug trafficking convictions. In the summer of June, 2021, appellant lived in a camper located in a friend's yard where he sold drugs.  After police became aware of the drug sales from the camper, the Sandusky County Drug Task Force investigated, using a confidential informant (CI) to make controlled buys from appellant. Police placed a recording device on the CI, and the CI made controlled buys from appellant in his camper on June 4, June 15, and June 17, 2021. On June 22, 2021, the task force executed a search warrant at appellant's home, and as a result, recovered quantities of methamphetamine and fentanyl, drug paraphernalia, syringes, scales, money, and weapons.

{¶ 3} On February 15, 2022, appellant was arraigned on 11 counts as follows:

Counts 1, 2, and 8, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(c), each a felony of the third degree;

Counts 3 and 4, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(d), each a felony of the second degree;

Count 5, aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a felony of the second degree;

Count 6, aggravated trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(d), a felony of the third degree;

2.

Count 7, possession of a fentanyl-related compound in violation of R.C. 2925.11(A)(2) and (C)(2)(c), a felony of the third degree;

Count 9, aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third degree;

Counts 10 and 11, possession of drugs in violation of R.C. 2925.11(A) and (C)(2)(a), each a felony of the fifth degree;

Counts 4, 6, and 8 each included a forfeiture specification within the indictment.

{¶ 4} In the weeks leading up to trial, appellant requested the name and criminal history of the CI, and also filed a motion to require the CI to testify at trial. The state filed responses in opposition, but did provide appellant with the CI's name and complete criminal history. Appellant's trial counsel acknowledged he viewed the videos of the controlled buys several months before the scheduled trial. The trial court denied the motion to compel the CI's appearance at trial, and the CI did not appear at trial.

{¶ 5} Appellant's case was tried to a jury on January 31, and February 1, 2023. The state's evidence included testimony by Task Force officers and Bureau of Criminal Investigation scientists, and the trial court admitted numerous exhibits that included video of the drug transactions and still shots taken from the video, photos of the cash used to make the purchases, and photos taken during the search of appellant's home and the drugs seized as part of the investigation. The state also introduced as exhibits various

3.

drug paraphernalia, drugs, money, and weapons seized in the search of appellant's camper. Additionally, the trial court admitted copies of the lab reports prepared by the BCI scientists.

{¶ 6} Significant to this appeal, the state's evidence demonstrated the amounts of methamphetamine purchased by the CI, as charged in the first three counts of the indictment. The evidence showed a purchase of 7.07 grams of methamphetamine for $200 on June 4, 2021 (as alleged in count 1), a purchase of 6.92 grams of methamphetamine for $200 on June 15, 2021 (as alleged in count 2), and a purchase of 27.79 grams of methamphetamine for $475 on June 17, 2021 (as alleged in count 3). The state also presented evidence as the remaining counts, detailing the drugs, weapons (real and fake), money, and paraphernalia seized as a result of the search of appellant's camper.

{¶ 7} At the close of the state's case, the trial court admitted all the state's proffered exhibits without objection by the defense. Appellant moved for acquittal pursuant to Crim.R. 29, which the state opposed. The trial court denied the motion for acquittal.

{¶ 8} Appellant, himself, was the only witness to testify in the defense case, and the defense pursued the defense of entrapment. Appellant admitted he was a drug user and admitted to selling drugs from his camper to the CI, a man he had known for a year or two and with whom he had engaged in drug transactions – sales, purchases, and trades

4.

– in the past. Appellant testified that he had a source in Toledo, and the drugs usually arrived within an hour when he "ordered" them from his source. He indicated his source "fronted" him the drugs, and he took the delivered drugs and packaged half for sale to cover the amount owed to his source, keeping the other half for his own use. Appellant testified:

> Yeah, I found out that you could buy it, sell half of it and buy it again; sell half of it; buy it again. I found out you could do that, and that's what I've been doing to support my habit for 20 years.

> {¶ 9} Appellant also acknowledged his prior convictions for possession and trafficking, in 2016, 2019, and 2020, and admitted ownership of all the drugs seized from his home. He further argued that he was a small-scale dealer, selling "less than bulk amount" to each buyer, up until the CI requested a larger purchase. However, appellant also testified that he was not opposed to larger sales, stating:

> I can't say – I can't say for sure if I would or would not, um, I wasn't out to make money. I was taking care of my own habit. If I had to care of my own habit and it meant doing big business, maybe I would.

In his testimony, appellant characterized his sales to the CI as a sale directly to the Task Force even though he had no knowledge of the Task Force's involvement at that time. Appellant also admitted he and the CI "traded" pills containing fentanyl, while refusing to describe the transactions as "sales."

{¶ 10} At the close of appellant's testimony, the defense rested without proffering any exhibits. Appellant again moved for acquittal pursuant to Crim.R. 29, and the trial court, again, denied the motion.

{¶ 11} The prosecutor and appellant's trial counsel then made their closing arguments to the jury. The prosecutor argued that appellant admitted that all the drugs and other items seized from his camper were his, and the state had video evidence of all three controlled buys to the CI. The prosecutor also noted appellant's admission to prior, drug trafficking convictions, and argued any claim of entrapment was refuted by appellant's own testimony that he had been selling to the CI for a couple of years and was not suspicious when the CI asked to purchase a large amount of drugs. The state finally noted appellant's admission that he would probably sell the same large amount of drugs to someone else if asked.

{¶ 12} Appellant's trial counsel focused his closing argument on reaching a "just verdict," asking the jury to consider appellant's living situation, his addiction, and the fact appellant was not "a major player with lots of money and carrying on." Appellant's counsel argued that when police began investigating appellant, they discovered only small drug sales from the camper, but instead of attempting to apprehend the supplier that appellant used, they chose to "induce" appellant to make a larger sale. Counsel argued that this larger drug transaction "would never have occurred without the police setting it

6.

up" and it would be wrong to convict appellant as the "big fish" instead of using appellant to "go up the ladder" to get the supplier.

{¶ 13} The trial court instructed the jury and provided an instruction regarding the affirmative defense of entrapment over the objection of the state. After deliberations, the jury returned guilty verdicts on all counts in the indictment. The trial court continued the matter for sentencing but did not request a presentence investigation report. The trial court did request an updated records check which disclosed a 2013 Arizona conviction for aggravated assault on an officer, for which appellant served a year of prison, and a pending possession/trafficking case in Erie County.

{¶ 14} On February 17, 2023, the trial court held a sentencing hearing, and heard from counsel and the appellant regarding sentence.

{¶ 15} The prosecution noted appellant's record, with repeated convictions for operating the business of selling methamphetamine and other drugs, arguing the amounts of drugs sold from or seized from appellant's camper had the potential to kill hundreds of people. Therefore, the state argued that, while the drug offenses are not offenses of violence, the offenses deeply affect the community in a negative way. After noting counts 4 and 5, 6 and 7, and 8 and 9 were subject to merger under R.C. 2941.25, the state elected to proceed to sentence as to Counts 4, 6, and 8. The state requested an aggregate sentence of 18 years, arguing the record supported the imposition of consecutive sentences.

7.

{¶ 16} Appellant's trial counsel argued for leniency, maintaining appellant was not a major drug dealer but an addict, just trying to support his habit with small sales. Counsel again referenced the entrapment claims, pursued at trial but implicitly rejected by the jury.[1]  Appellant then spoke on his own behalf, apologizing for his conduct and "for putting drugs in the community and making the community an unsafe place[.]"

{¶ 17} The trial court ordered Counts 4 and 5, 6 and 7, and 8 and 9 merged, and noting the state's election, proceeded to sentencing on Counts 4, 6, and 8.  The trial court considered the factors under R.C. 2929.11 and 2929.12, and imposed sentence as follows:

> Count 1, aggravated trafficking in violation of R.C. 2925.03(A)(1) and (C)(1)(c), a felony of the third degree: a prison term of 36 months;

> Count 2, aggravated trafficking in violation of R.C. 2925.03(A)(1) and (C)(1)(c), a felony of the third degree: a prison term of 36 months;

> Count 3, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(d), a felony of the second degree: a prison term of 6 years;

> Count 4, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1)

---

[1] Counsel stated at hearing, "[O]bviously, the jury rejected our entrapment defense."

8.

and (C)(1)(d), a felony of the second degree: a prison term of 6 years;

Count 6, aggravated trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(d), a felony of the third degree: a prison term of 24 months;

Count 8, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(1)(c), a felony of the third degree: a prison term of 24 months;

Count 10, possession of drugs in violation of R.C. 2925.11(A) and (C)(2)(a), a felony of the fifth degree: a prison term of 12 months;

Count 11, possession of drugs in violation of R.C. 2925.11(A) and (C)(2)(a), a felony of the fifth degree: a prison term of 12 months.

{¶ 18} Additionally, the trial court addressed the consecutive sentencing factors under R.C. 2929.14(C)(4), and found:

As to the consecutive sentences under the discretionary consecutive sentence findings, Court does find that consecutive sentences are made necessary to protect the public from future crime or to [punish] the Defendant and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public, and at least two of the multiple offenses were

9.

committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any other course of conduct adequately reflects the seriousness of the Defendant's conduct, and the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

{¶ 19} The trial court ordered the sentences for Counts 1, 2, and 3 to run concurrent to each other, ordered the sentence for Count 4 to run consecutive to the sentence in Count 3, and ordered the sentence for Count 6 to run consecutive to the sentence in Counts 3 and 4. The trial court then ordered the remainder of the counts to run concurrent to each other, for an aggregate minimum sentence of 14 years, with the aggregate maximum, indefinite term of 17 years. Additionally, pursuant to the forfeiture specifications attached to Counts 4, 6, and 8, the trial court ordered the property forfeited.

{¶ 20} Appellant filed a timely appeal from the judgment.

### III. Assignment of Error

{¶ 21} On appeal, appellant asserts the following assignments of error:

1. The trial court erred in denying Mr. Alley's motion to require the testimony of the Confidential Informant (C.I.) pursuant to hearsay and the Confrontation Clause of the Ohio and United States Constitutions and

further erred in overruling objections to the Detective's hearsay knowledge gleaned from the declarant C.I., or alternatively, counsel provided ineffective assistance of counsel.

2. The trial court committed plain error in admitting expert testimony from Kristen Canfield of BCI without the State moving to qualify her as an expert, resulting in insufficient evidence as to counts 1, 2, and 3.

3. The trial court erred in imposing consecutive sentences.

## IV.    Analysis

{¶ 22} Appellant's first and second assignments of error challenge evidence regarding the first three counts in the indictment, or evidence obtained through the Task Force's use of the CI.  His third assignment of error challenges the imposition of consecutive sentences.  In support of his argument, appellant references his entrapment defense.  Because appellant raised this affirmative defense, we must first address the legal effect of that defense on the argument raised on appeal.

### A.    Appellant admitted to committing the charged offenses by raising the affirmative defense of entrapment.

{¶ 23} Appellant argued entrapment at trial and he testified on his own behalf, admitting to selling drugs to the CI and claiming all the property seized from the camper as his own. "Entrapment is an affirmative defense under R.C. 2901.05[(D)(1)]." *State v.*

11.

*Doran*, 5 Ohio St.3d 187, 449 N.E.2d 1295 (1983), paragraph two of the syllabus.[2]

Pursuant to R.C. 2901.05(D)(1):

> (1) An "affirmative defense" is either of the following:
>
> (a) A defense expressly designated as affirmative;
>
> (b) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence.

By raising the defense of entrapment, "the commission of the offense is admitted and the accused seeks to avoid criminal liability therefor by maintaining that the government induced him to commit an offense that he was not predisposed to commit." *Doran* at 193. As such, entrapment is the "classic confession and avoidance" that involves "an excuse or justification." *Id.,* citing former R.C. 2901.05(C)(2).

{¶ 24} The record demonstrates that despite the trial court instructing the jury on the affirmative defense of entrapment, the jury found appellant guilty on all counts charged in the indictment. Now, on appeal, appellant attempts to challenge the evidence for the crimes he admitted by asserting an affirmative defense, while also arguing his unsuccessful entrapment defense to demonstrate prejudice and challenge the imposition of consecutive sentences. Appellant raises no challenge, however, based specifically on

---

[2] *Doran* cited to the same language under section (C)(2) of an earlier version of the statute.

12.

matters related to his unsuccessful affirmative defense. Significantly, appellant does not assert any error based on proof of his affirmative defense.

{¶ 25} While appellant might believe the Task Force entrapped him by enticing him to make larger than usual sales to the CI, this belief is not an established fact on appeal. Instead, the jury's guilty verdicts demonstrated an implicit rejection of appellant's entrapment defense, as acknowledged by appellant at the time of sentencing. Therefore, to the extent that appellant relies on entrapment to support his assigned errors on appeal, we give no weight to appellant's belief regarding entrapment in resolving the issues raised on appeal.

**B.     The lack of testimony from the CI did not cause reversible error**

{¶ 26} Appellant challenges only evidence relative to the first three counts of the indictment. Appellant does not otherwise challenge the evidence or testimony related to the remaining counts, focusing solely on the CI's involvement and his entrapment defense. We limit our analysis, relative to the first two assignments of error, accordingly.

{¶ 27} In his first assignment of error, appellant raises three, separate challenges. Appellant argues the trial court erred in denying his motion to require the testimony of the CI. He also argues the trial court erred in permitting testimony regarding what police learned through the CI. Finally, appellant argues his trial counsel provided ineffective assistance of counsel. For ease of discussion, we address these issues in reverse order.

13.

**1. Failure to request a limiting instruction did not result in ineffective assistance of counsel**

{¶ 28} We first consider appellant's claim of ineffective assistance of counsel. In considering this claim, we employ a two-step process. *State v. Bradley,* 42 Ohio St.3d 136, 141, 538 N.E.2d 373 (1989); *see also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[W]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Bradley* at 142, quoting *Strickland* at 687-688. "Next, and analytically separate" from the issue of effectiveness, "there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." (citation omitted) *Bradley* at 141-142. Applying this standard, reversal is merited only if appellant demonstrates that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bradley* at 142.

{¶ 29} The specific error of counsel, argued by appellant, is his trial counsel's failure to request a limiting instruction regarding statements made by the CI contained in the recordings of the controlled buys. In support of this claimed error, however, appellant does not identify which statements required a limiting instruction.

{¶ 30} Appellant did not object to the admission of the recordings of the three controlled buys, and within his own testimony, he acknowledged his sales to the CI, a known associate of appellant. In arguing that a limiting instruction was necessary,

14.

appellant relies on authority in which the out-of-court statements of the CI identified the seller, an issue that remained a disputed issue at trial in that case. *See State v. Ward,* 3d Dist. Seneca No. 13-11-17, 2023-Ohio-988, ¶ 4-5. The trial court in *Ward* admitted recordings containing such statements, but provided a limiting instruction addressing the hearsay within the recordings. *Id* at ¶ 46.

{¶ 31} In this case, the appellant, himself, established the issue of identity, admitting he sold drugs to the CI in his trial testimony. Appellant references no other statements that he claims required a limiting instruction. In order to demonstrate ineffective assistance of counsel, appellant has the burden of demonstrating both that his counsel's performance fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, the outcome of the trial would have been different. *State v. Alexander,* 2023-Ohio-2708, -- N.E.3d -- (6th Dist.), ¶ 62-63, citing *Bradley* at 142; *Strickland* at 687-688.

{¶ 32} In this instance, appellant fails to demonstrate either deficiency or prejudice, and based on his own admissions on the stand at trial, we find no basis to determine the lack of a limiting instruction regarding any statement the CI made in the recordings effected the outcome of trial. This determination regarding lack of prejudice is dispositive of appellant's claim of ineffective assistance of counsel. *See Alexander* at ¶ 75, quoting *Strickland* at 697 ("If it is easier to dispose of an ineffectiveness claim on the

15.

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

{¶ 33} Accordingly, appellant fails to demonstrate error based on ineffective assistance of counsel arising from the lack of a limiting instruction.

2.    **The admission of the detective's testimony concerning information gleaned from the CI did not constitute reversible error**

{¶ 34} Appellant next argues that the trial court committed error by overruling his objection and permitting testimony that identified appellant as the seller.  At trial, the detective testified regarding what the CI observed, including information that identified appellant as the individual selling drugs from the camper.  Appellant's trial counsel objected to testimony regarding what the CI saw as a violation of his confrontation rights.

{¶ 35} "The Sixth Amendment's Confrontation Clause provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him. * * *.'"  *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 34.  This means that out-of-court statements that are testimonial are inadmissible unless the declarant is an unavailable witness and there was a prior opportunity to cross-examine the declarant.  *Id.,* citing *Crawford v. Washington,* 541 U.S. 36, 53-54, 124 S.Ct.1354, 158 L.Ed.2d 177 (2004).  "A statement will be said to be 'testimonial' if 'it is made with "a primary purpose of creating an out-of-court substitute for trial testimony."'"  *State v. Fitts,* 6th Dist. Wood No. WD-18-092, 2020-Ohio-1154, ¶ 17,

16.

quoting *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 181

(additional citation omitted.).

{¶ 36} The indication by the CI that he was buying drugs from appellant did not concern a contested issue at trial. Moreover, while appellant argues that nobody but the CI actually witnessed him selling drugs, the video recordings of the controlled buys identified appellant as the seller, and these recordings were viewed by the jury during trial. Appellant, thereafter, testified and admitted to selling drugs to the CI, indicating he and the CI had bought, sold, and traded drugs with each other for around two years prior to the controlled buys. It is unclear, and appellant fails to articulate, what right of cross-examination was violated by the detective's testimony.

{¶ 37} The Confrontation Clause guarantees an accused the opportunity to effectively cross-examine a declarant, without any guarantee of an opportunity for a *successful* cross-examination. (Citations omitted) *State v. Arnold,* 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 68-69. In arguing a violation, appellant mischaracterizes the evidence admitted through the detective as identifying evidence, ignoring the record of trial in which appellant admitted to the offenses in pursuing his affirmative defense.

{¶ 38} Considering the record, we find admission of the CI's statement through the detective's testimony could only be deemed harmless error. Even assuming a violation occurred, such error could only be construed as harmless where there is "no

17.

reasonable possibility that the improperly admitted evidence contributed to the conviction * * * the alleged confrontation error was harmless beyond a reasonable doubt." (Citation omitted.) *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 192.

{¶ 39} Appellant's claim of a Confrontation Clause violation, accordingly, would not require reversal even if we determined such a violation occurred.

3. **Appellant demonstrates no error in the trial court's denial of his motion to compel the CI's testimony at trial.**

{¶ 40} Finally, appellant argues that the trial court erred in denying his motion to compel the testimony of the CI at trial. Appellant characterizes the state's failure to call the CI as a witness in its case as a violation of his right to confront the CI under the Sixth Amendment, based on admission of the recordings of the controlled buys. By affirmatively stating no objection to the admission of the recordings at trial, appellant waived his appellate challenge to this admission. *State v. Fitts,* 6th Dist. Wood Nos. WD-18-092, WD-18-093, 2020-Ohio-1154, ¶ 21.

{¶ 41} On appeal, appellant does not argue plain error in the admission of the recordings, and he acknowledges the admissibility of recordings to provide context for the controlled buys. *See, e.g., Fitts* at ¶ 25 ("Ohio courts have routinely recognized that 'audio recordings of actual drug transactions are not hearsay, and * * * the introduction of such recordings does not violate the confrontation clause'") (citations omitted.). This leaves a Confrontation Clause challenge to a witness the state never called, albeit a

18.

witness appellant may have wished to examine on the witness stand, likely in support of his entrapment defense.

{¶ 42} The record demonstrated that appellant knew the CI, and appellant had a history with the CI prior to the Task Force using the CI as its informant. The record also demonstrated no effort by appellant to secure the CI's testimony at trial, despite appellant's knowledge of the CI. Appellant, furthermore, makes no argument regarding actual cross-examination of the CI, limiting his argument to his right to question the CI under oath without any identification of the subject of the questioning.

{¶ 43} Considering appellant's argument regarding the CI's testimony, we find no basis to find that testimony was required in this case, or that the trial court's denial of appellant's motion to compel the CI to appear constituted error. Accordingly, based on our determination regarding ineffective assistance of counsel and appellant's confrontation argument, relative to the CI, we find appellant's first assignment not well-taken.

C.  **The failure to move to qualify BCI scientist Canfield as an expert does not merit reversal.**

{¶ 44} In his second assignment of error, appellant argues the trial court committed plain error in permitting BCI scientist Kristen Canfield to offer expert testimony. Appellant acknowledges that, while the state adduced testimony and evidence of Canfield's qualifications, the state failed to move to have her qualified as an expert witness. Appellant did not object to either Canfield's testimony or the admission of

19.

Canfield's report, waiving all but plain error. *See State v. Hartman,* 93 Ohio St.3d 274, 286, 754 N.E.2d 1150 (2001) (where state never moved to qualify expert, but defense counsel did not object or challenge the expert's qualifications, defendant waived all but plain error).

{¶ 45} Plain error is error "affecting substantial rights[.]" Crim.R. 52(B). To demonstrate plain error, appellant must show an error occurred, that the error was plain, and that the error affected his substantial rights. *State v. Bond,* 170 Ohio St.3d 316, 2022-Ohio-4150, 212 N.E.3d 880, ¶ 17, citing *State v. Wilks,* 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52; Crim.R. 52(B). In considering whether substantial rights have been implicated, "the trial court's error must have affected the outcome of the trial." *Bond* at ¶ 17, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Furthermore, we reverse based on plain error only in "exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 46} In challenging the admission of Canfield's testimony, appellant does not dispute her qualifications or the accuracy of her testing and results, and merely argues that the substance of her testimony was important to the state in demonstrating sufficient evidence for conviction. Upon review of the record, we find no plain error based on Canfield's testimony.

20.

{¶ 47} The record demonstrates Canfield had specialized knowledge, skill, experience, training, and education as required by Evid.R. 702(B). Her curriculum vitae indicated she had earned a master of science degree in forensic science and had experience as a forensic scientist with the BCI, with additional training in the analysis of controlled substances. Appellant's trial counsel, moreover, did not challenge Canfield's qualifications in cross-examination, but instead probed into Canfield's testing process, inquiring into whether Canfield also tested the purity of the methamphetamine submitted by police after obtaining the samples from the CI's controlled buys. Furthermore, appellant's own testimony acknowledged the amount of drugs sold to the CI, with no testimony that attempted to refute Canfield's findings.

{¶ 48} Considering the record, we find no plain error, as Canfield's training and experience as a forensic scientist qualified her to testify as an expert, and appellant's own testimony tended to corroborate her testimony. *See Hartman* at 286 (no plain error where witness had requisite qualifications to provide expert opinion, despite failure to formally tender as expert witness). Therefore, we find appellant's second assignment of error not well-taken.

**D.     The trial court's imposition of consecutive sentences is supported by the record.**

{¶ 49} In his final assignment of error, appellant argues the trial court erred in imposing consecutive sentences, relying on the reasoning stated in *State v. Gwynne,* Slip Opinion 2022-Ohio-4607 (*Gwynne IV*). Specifically, appellant argues he was a small-

21.

time drug dealer, "bedazzled by $500," and was simply dealing drugs to support his addiction, factors that should have weighed against consecutive sentences under the authority of *Gwynne IV,* which permitted de novo review to determine whether the record clearly and convincingly did not support the consecutive-sentence findings. *Gwynne IV* at ¶ 1.

{¶ 50} On October 25, 2023, after briefing was completed in appellant's case, the Ohio Supreme Court vacated *Gwynne IV* on reconsideration. *See State v. Gwynne,* Slip Opinion 2023-Ohio-3851 (*Gwynne V*). In vacating the prior decision, upon which appellant relies, the Supreme Court held:

R.C. 2953.08(G)(2)(a) is plain and unambiguous and permits an appellate court to modify or vacate consecutive sentences if it clearly and convincingly finds that the record does not support the trial court's consecutive-sentence findings. Our analysis simply applies this standard created by the statute and concludes that the court of appeals could not clearly and convincingly find that the record does not support the trial court's findings. This does not mean that we would impose the same sentence if we sat in the trial court's place. But contrary to the assertion in the first dissent, we may not rely on our own findings of fact (or speculation)—such as a finding that criminal activity tends to reduce with age, that Gwynne's offenses were crimes of opportunity, or that mental-

22.

health issues are likely involved—to second-guess the trial court's factual findings in support of consecutive sentences. Even the first dissent recognizes that "'the appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made,'" first dissenting opinion at ¶ 71, quoting *Gwynne IV*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 21. Appellate review turns on whether the trial court's findings are clearly and convincingly not supported by the record, and if the evidence supports the trial court's consecutive-sentence findings, the analysis ends there.

*State v. Gwynne,* Slip Opinion 2023-Ohio-3851, ¶ 24 (*Gwynne V*).

{¶ 51} Based on his reliance on authority that is no longer good law, appellant's challenge to consecutive sentences does not address the trial court's consideration of the statutory factors in imposing consecutive sentences, and appellant, furthermore, acknowledges that he "does meet some of the underlying criteria for such an imposition," challenging only the trial court's finding that consecutive sentences are necessary to protect the public and no disproportionate to the seriousness of the offender's conduct and to the danger posed to the public.

{¶ 52} The record, in this case, demonstrates the trial court made the required findings under R.C. 2929.14(C)(4), both at the sentencing hearing and in the sentencing entry. Pursuant to R.C. 2929.14(C)(4), the required findings are as follows:

23.

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 53}** In challenging the trial court's findings, appellant cites to trial testimony rather than the findings made on the record at his sentencing hearing. Considering the record of the sentencing hearing, we find the trial court addressed each of the required findings, and the record clearly supports the trial court's findings. The trial court's findings, moreover, included weighing the seriousness of the offenses and danger to the public against the need to prevent future crime, punish the offender, and protect the public. Considering this record, we do not find that the trial court's findings lack clear and convincing evidentiary support. Accordingly, we find appellant's third and final assignment of error not well-taken.

### V.     Conclusion

**{¶ 54}** Finding substantial justice has been done, we affirm the judgment of the Sandusky County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.               _____
                                                              JUDGE
Gene A. Zmuda, J.

                                                    _____
Charles E. Sulek, P.J.               JUDGE
CONCUR.

                                                    _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.