[Cite as *State v. Hashim*, 2024-Ohio-2753.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No.  L-23-1120

        Appellee                                 Trial Court No.  CR-22-1826

v.

Amir Hashim
                                                        **DECISION AND JUDGMENT**

        Appellant                                Decided:  July 19, 2024

* * * * *

Julia Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant, Amir Hashim, appeals the judgment of the Lucas County Court of Common Pleas convicting him, following a jury trial, of one count of murder, two counts of attempted murder, and two counts of felonious assault, each with attendant firearm specifications.  For the following reasons, the trial court's judgment is affirmed.

**I. Factual Background and Procedural History**

**{¶ 2}** On May 19, 2022, the Lucas County Grand Jury returned a six-count indictment against Hashim relating to his conduct on two separate occasions. First, the indictment charged him with one count of murder in violation of R.C. 2903.02, for the killing of P.C. on or around April 25, 2022. Second, the indictment charged him with two counts of attempted murder in violation of R.C. 2903.02, 2923.02, and 2929.02, two counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D), and one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1) and (C), for the shooting of E.A. on or around May 5, 2022. Each of the counts contained an attendant firearm specification under R.C. 2941.145. Hashim pleaded not guilty and the matter eventually proceeded to a jury trial.[1]

### A. April 25, 2022 Shooting Incident

**{¶ 3}** At trial, it was revealed that around 9:30 a.m. on April 25, 2022, an adult male was found dead with a gunshot wound to the head. The victim was wearing a black, baclava style hood, which had gunshot residue on it, indicating that the shot was fired from close range. An autopsy recovered the bullet projectile that passed through the victim's brain and lodged in his bone, killing him. The body was found in the hallway near apartment 6 of 2203 Lagrange Street in Toledo, Ohio. The building at that address is akin to a boarding house with several rooms sharing a common area and kitchen. At first, the police believed that the deceased was Hashim, who lived in apartment 6. Later, they determined through identification by the victim's family that the victim was P.C.

**{¶ 4}** P.C.'s sister, A.S., testified that P.C. and Hashim had been longtime friends. Following the homicide, she was on a phone call with Hashim, Hashim's father, one of P.C.'s

---

[1] Hashim sought to enter a plea of not guilty by reason of insanity, but following an evaluation and competency hearing he was found competent to stand trial.

2.

cousins, and a friend named E.J. During that conversation, Hashim denied arguing with P.C. during a 12-minute phone call that occurred on the morning that P.C. was shot. Hashim also denied deleting any Facebook messages between himself and P.C. A.S., however, authenticated the Facebook messenger conversation, which showed a 12-minute audio call at 3:07 a.m. on April 25, 2022, and which showed that four messages from Hashim to P.C. had been "unsent." The discussion on Facebook concerned P.C. becoming upset because he had lent a gun to Hashim and wanted it back, but Hashim claimed that he could not find it.

{¶ 5} The police interviewed Hashim following the shooting. Toledo Police Detective Gary Bunting testified that Hashim was vague and evasive during the interview. He stated that he did not live at 2203 Lagrange Street but uses that address as his residence and stays there occasionally. Hashim told the police that he was not present at the time of the shooting and that he was with a male cousin named M.D. on Upton Avenue. Notably, in the phone call with A.S. and P.C.'s family, Hashim stated that he was with a female that night. Bunting testified that he searched through his databases and the Ohio Bureau of Motor Vehicle records and was unable to locate any records of M.D. When the shooting was discussed, Hashim initially denied knowing P.C., then he stated that he knew him but was not very familiar with him. He also initially stated that he had not seen P.C. for about a week before the shooting, then changed his story and admitted that he hung out with him for a while in the afternoon on April 24, 2022.

{¶ 6} Cell phone records show that Hashim's phone was near Upton Avenue on the early morning of April 25, 2022. At approximately 4:40 a.m., the phone began to move east to west, consistent with travelling on Interstate 75. From approximately 4:49 a.m. to 4:54 a.m., the phone contacted a tower covering the location of the crime scene. The phone then traveled again and was in the Upton Avenue area at 5:12 a.m. where it remained.

3.

**B. May 5, 2022 Shooting Incident**

{¶ 7} Concerning the State's presentation of evidence of the incident that occurred in the afternoon of May 5, 2022, video surveillance showed two men dressed in all black near 928 Yates Street in Toledo, Ohio, which was adjacent to 2203 Lagrange Street. The videos showed the men walk into the street and out of the camera's view. Moments later, one of them could be seen running back across the sidewalk.

{¶ 8} On the sidewalk behind 2203 Lagrange, officers found a spent cartridge casing. Across the street, a second spent cartridge casing was found. Near the second casing was the victim, E.A.'s, coat. The coat had two bullet holes through the hood and a heavy amount of gunpowder residue indicating that the shot was fired at close range. The coat was still wet with E.A.'s blood.

{¶ 9} T.N., who was a resident at 2203 Lagrange Street testified that she was with E.A. on the morning of May 5, 2022. She observed Hashim shoot E.A. in the back of the head at close range. She called 911 for help and her call was played for the jury. Although the shooter had his hood pulled up, and at the trial T.N. admitted she was nervous about identifying Hashim, she testified that Hashim shot E.A. and there was no possibility that she was mistaken.

{¶ 10} E.A. also testified. He stated that on May 5, 2022, he was outside with T.N. and another individual. Hashim was sitting nearby on the porch, but then he approached and, without saying anything, shot E.A. in the back of the head. E.A. remembered feeling a burning sensation and ran across the street where he fell down. He had been shot in the back of the head and in the shoulder. On cross-examination, E.A. admitted that he did not see who shot him, but T.N. and his other friend told him that it was Hashim.

4.

{¶ 11} The police again interviewed Hashim and he stated that he was playing basketball at Wilson Park at the time that E.A. was shot. Hashim initially claimed that he heard about the shooting from his mother, then later stated that he heard about it from his father. He also asserted that he walked by the crime scene while the police were still present and additionally said that he saw it on the news.

{¶ 12} Hashim registered a new cell phone three days after the April 25, 2022 incident. Cell phone data from the new phone showed it being in the area of Yates Street and Lagrange Street on May 5, 2022, minutes before the shooting occurred. At no time was Hashim's cell phone in the area of Wilson Park.

### C. Physical Evidence

{¶ 13} Hashim was apprehended on May 10, 2022. A search warrant was thereafter executed at 2203 Lagrange Street. In the attic room where Hashim was found and where it appeared he was living, the police found .40 caliber ammunition, .38 caliber ammunition, and 9mm ammunition. Hidden behind a partial wall, the police also found a .38 caliber revolver and a 9mm Taurus pistol separately wrapped in plastic bags.

{¶ 14} Kaitlyn Vorst, an expert in firearm comparison and tool mark analysis, testified that the projectile recovered from P.C.'s body was a match to the revolver found in Hashim's attic space. Similarly, Vorst testified that the cartridge casings found on the street near E.A. were a match to the 9mm Taurus pistol. Vorst's conclusions were based on an examination of microscopic markings made on the projectile and cartridge casings. On cross-examination, Vorst testified that she took photographs of the individual characteristics that she was comparing, but the photographs were not included in her report or work product and instead were just part of her documentation. According to Vorst, pictures show only one location on the projectile or

5.

cartridge casing, whereas she is looking at multiple locations, so the pictures can be confusing or unhelpful.

{¶ 15} Davis Ross, an expert in forensic DNA analysis examined DNA swabs taken from the .38 caliber revolver and the Taurus pistol. Ross testified that a single DNA profile was found on the trigger and gun body of the revolver, and that profile matched Hashim's DNA profile. The Taurus pistol contained a mixture of DNA profiles on the trigger and gun body, the major contributor of which matched Hashim's DNA profile. In both cases, the likelihood of finding a matching profile from someone other than Hashim was calculated to be less than one in one trillion.

{¶ 16} Finally, a second expert in forensic DNA analysis, Stacey Violi, testified that she performed a Y-STR DNA analysis on P.C.'s left and right hands. On both hands, Hashim was a major contributor. The likelihood of finding a similar profile match varied based on the location of the swab, ranging from one in one hundred to one in two thousand seven hundred.

### D. Finding of Guilt and Sentencing

{¶ 17} Following the presentation of the evidence, the jury returned with a guilty verdict on the count of murder, the two counts of attempted murder, and the two counts of felonious assault, with their attendant firearm specifications. The jury returned a not guilty verdict on the count of improperly discharging a firearm into a habitation.

{¶ 18} At sentencing, the trial court merged the two counts of attempted murder and the two counts of felonious assault, with the State electing to proceed to sentencing on one count of attempted murder. In total, the trial court sentenced Hashim to an indefinite life sentence with the possibility of parole after serving 32 to 37 and one-half years.

### II. Assignments of Error

6.

**{¶ 19}** Hashim timely appealed the judgment of the Lucas County Court of Common Pleas, raising two assignments of error for review:

1. The Best Evidence Rule required Kaitlyn Vorst to present the photos showing the striations that purported to show the casings found on the crime scene matched the gun found in the attic at the boarding house.

2. The convictions were against the manifest weight of the evidence.

### III. Analysis

### A. Best Evidence Rule

**{¶ 20}** In his first assignment of error, Hashim challenges the introduction of Vorst's testimony as being in violation of the best evidence rule set forth in Evid.R. 1002, which provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." He contends that the State should have been required to present to the jury the photographs of the individual characteristics that Vorst analyzed to determine that the projectiles matched the guns.

**{¶ 21}** Notably, Hashim did not object to Vorst's testimony or to the reports detailing her findings that were entered into evidence. Thus, Hashim has waived all but plain error. *See State v. McAlpin*, 2022-Ohio-1567, ¶ 112 (failure to object to the introduction of allegedly inadmissible evidence forfeits all but plain error); *State v. Alley*, 2024-Ohio-115, ¶ 44 (6th Dist.).

**{¶ 22}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error will be

7.

recognized only where, but for the error, the outcome of the case would clearly have been different." *State v. Vasquez*, 2024-Ohio-2496, ¶ 25 (6th Dist.), citing *State v. Roby*, 2022-Ohio-223, ¶ 19 (6th Dist.). "The Ohio Supreme Court has cautioned courts to notice plain error 'under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 23.

{¶ 23} Here, Hashim has not demonstrated any error, let alone plain error. As noted by the State, Vorst's testimony was not admitted to prove the content of the photograph. Instead, she testified based on her personal observations and analysis that the projectile and cartridge casings matched the revolver and Taurus pistol respectively. Thus, the best evidence rule is not implicated, and the trial court did not commit plain error in admitting Vorst's testimony and reports.

{¶ 24} Accordingly, Hashim's first assignment of error is not well-taken.

### B. Manifest Weight

{¶ 25} In his second assignment of error, Hashim argues that his convictions are against the manifest weight of the evidence.

{¶ 26} When reviewing a manifest weight claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *Thompkins* at 387.

8.

{¶ 27} In support of his assignment of error, Hashim does not assert that the elements of the crimes were not met, only that he was not the person who committed them. Specifically, he notes that there were no eyewitnesses to the murder of P.C. Further, he contends that the person who shot E.A. could not be positively identified because that person's face was covered with a hoodie. Finally, he argues that the cell phone location data was only an estimation within several miles of where the phone could have been and is not reliable to prove his presence at the crime scenes.

{¶ 28} Upon review of the entire record, this is not the exceptional case in which the jury clearly lost its way and the evidence weighs heavily against the convictions. Regarding the murder of P.C., Hashim's DNA was found on the victim's hands, the projectile matched a revolver that was found in the location where Hashim was apprehended, and Hashim's DNA was on that revolver. Further, Hashim lied about his familiarity with P.C. and the last time that he saw him. Hashim also was arguing with P.C. on Facebook shortly before the shooting, and then deleted some of his messages. Finally, Hashim's cell phone pinged towers near the location of the crime scene at the time of the shooting. This evidence, when considered together, weighs heavily in favor of Hashim's conviction for the murder of P.C.

{¶ 29} As to the attempted murder of E.A., the shell casings from the crime scene matched a Taurus pistol that was found in the location where Hashim was apprehended, and Hashim's DNA was on that pistol. Additionally, an eyewitness who previously knew Hashim, T.N., positively identified him as the shooter despite the shooter's hood being pulled over his face. T.N. testified that there was no possibility that she was mistaken. Finally, cell phone location data placed Hashim's phone near the location of the shooting, and not anywhere near the

9.

park where Hashim claimed he was playing basketball. Thus, the evidence weighs heavily in favor of Hashim's conviction for the attempted murder of E.A.

**{¶ 30}** Accordingly, because Hashim's convictions are not against the manifest weight of the evidence, his second assignment of error is not well-taken.

## IV. Conclusion

**{¶ 31}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Hashim is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgement affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Myron C. Duhart, J.

Charles E. Sulek, PJ.
CONCUR.

JUDGE

JUDGE

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.